STEVEN W. BARRICK & ASSOCIATES, Plaintiffs-Appellees, v. JAMIE WITZ *et al.*, Defendants-Appellants.

Second District   No. 2—85—0758

Opinion filed September 26, 1986.

Barry A. Schultz, of Prairie State Legal Services, Inc., of Waukegan, for appellants.

James P. Hecht, of Woodstock, and William P. Stanton, of Crystal Lake, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from a judgment entered by the circuit court of McHenry County, in a forcible entry and detainer action brought by plaintiffs against tenants Jamie and Deia Witz. Judgment was entered for plaintiffs, the owner and managing agent of a federally subsidized housing project, for possession of the premises and $732.80 in damages, including a double rent recovery pursuant to the lease.

The defendants rented an apartment from plaintiffs in June of 1983 under a written lease and a Federal assistance contract. Their lease was renewed in 1984. The defendants received a termination notice on April 3, 1985, to be effective upon the expiration of their lease on May 31, 1985. The notice was accompanied by an explanatory letter referring to altercations between Mr. Witz and three former neighbors, each of whom lived above the defendants at some time during the Witz' tenancy.

Testimony at trial established that Mr. Witz complained regularly about noise in the apartment above his, both to the occupants and to the building manager, and that he made threats to two former residents of that apartment. One threat was made in April and one in July 1984. Also in July 1984 Mr. Witz threatened a maintenance man who was cleaning the apartment and told the manager that he would "smear the maintenance man's teeth" if the noise were not stopped. No charges were filed with regard to any of these incidents.

A third occupant testified that Mr. Witz only occasionally complained to her about noise between August 1984 and March 1985, and that in March 1985 she complained to a maintenance man that she was afraid of Mr. Witz, and felt she could not have friends over because he might complain. It was the same month this complaint was made that plaintiffs sent defendants the notice of termination. The defendants consistently paid their portion of the rental on time each month, and plaintiffs accepted each payment through May 31, 1985. Plaintiffs refused defendants' tender of the June 1985 rent and filed their complaint on June 13, 1985.

The defendants raise three issues on appeal: (1) whether plaintiffs waived their grounds for terminating the lease by accepting rent from defendants after each of the incidents described and after having sent a notice to terminate the lease; (2) whether the termination notice satisfied the requirements of the applicable Federal regulations and due process of law; and (3) whether the lease's double rent clause can properly be applied to defendants.

The Witz' lease is subject to Federal regulations governing the section 8 housing assistance program. The regulations dealing with the

termination of a section 8 lease provide that such a lease may not be terminated "solely because of expiration of an initial or subsequent renewal term," and that the "owner may not terminate any tenancy except" upon certain grounds, including, as is argued here, "material noncompliance with the lease." (24 C.F.R. sec. 883.708(b)(1) (1985).) The regulations further state that the above provisions apply "to all decisions by an owner to terminate the tenancy *** during or at the end of the family's lease term." 24 C.F.R. sec. 883.708(a) (1985).

■ The lease requires residents to "refrain from acts or practices which disturb neighbors." Defendant-appellant argues that, while his actions may have constituted material noncompliance with that provision of the lease for which plaintiffs had a statutory right to terminate the lease, plaintiffs waived the breach and the right to terminate by subsequently accepting defendants' rental payments without protest. As a general rule, lease forfeiture is disfavored, and "courts will readily adopt any circumstances that indicate an intent to waive a forfeiture." (*Housing Authority v. Little* (1978), 64 Ill. App. 3d 149, 150.) Furthermore, a lessor's acceptance of rent accruing after a breach, with knowledge of the breach, will act as a waiver of his right to declare a forfeiture. *Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 992. See also *Weiss v. Johnson* (1963), 28 Ill. 2d 259, 261.

The trial court rejected defendants' waiver argument, concluding that it is not applicable to a termination of tenancy based on the lessor's refusal to renew a lease rather than termination during the course of the lease. We disagree.

The Federal regulations prohibit a lessor's termination of a section 8 lease simply because the lease term has expired. (24 C.F.R. sec. 883.708(b)(1) (1985).) The lessor must establish cause for termination, whether he wishes to terminate during the lease or at the conclusion of the lease term. (24 C.F.R. sec. 883.708(a) (1985).) In other words, the lessor cannot escape the requirement that there be grounds for termination of the lease by delaying termination until the end of the lease period.

The effect of the regulation is to give the section 8 tenant an option to automatically renew the lease so long as the lessor has not terminated it for cause. At issue, then, is whether waiving a breach of an existing lease, rather than declaring an immediate forfeiture, precludes a lessor from using that breach as a ground for terminating the lease at the end of the lease term when the lessee holds an option to renew.

■ This court has held that a lessor may not revive grounds for forfeiture which he previously waived in order to prevent lessee's exer-

cise of an option to purchase. (*Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987; see also *Perry v. Waddelow* (E.D. Ill. 1956), 145 F. Supp. 349 (dealing with an option to renew a lease).) In *Okey*, the lessor continued to accept rent and to treat the lessee as his tenant after the lessee had filed for bankruptcy and was late with a number of rental payments. Later, when solvent and current in rent payments, the tenant attempted to exercise his rights under the option. The lessor refused to convey the property, however, citing the bankruptcy as grounds for forfeiture of the option. (*Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 988-89.) The court held that the lessor was estopped from relying on those breaches as grounds for rejecting lessee's exercise of the option. 96 Ill. App. 3d 987, 992.

Plaintiffs claim that *Okey* is not controlling, however, and that the decisions in *Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, and *Soltwisch v. Blum* (1973), 9 Ill. App. 3d 760, should apply. In *Lake Shore Country Club*, the tenant held an option to purchase rental property which was expressly conditioned upon there being no default in the lease terms. (*Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, 518.) The court held that because the tenant was in breach of the lease contract at the time it attempted to exercise the option the conditions precedent had not been met. (339 Ill. 504, 522.) The case is not on point, however, because the court concluded that the lessor had not had sufficient knowledge of the material facts and thus had not made an effective waiver. (339 Ill. 504, 524.) Additionally, the *Okey* court distinguished *Lake Shore Country Club*, indicating that if there had been a waiver in the latter case, the option would have remained effective. *Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 991-92.

In the *Soltwisch* case, this court found that a lessor could rely on a breach of an existing lease to refuse to give effect to a second lease which was to begin on the termination of the first. In *Soltwisch*, as in *Lake Shore Country Club*, compliance with the terms of the first lease was made an express condition to the effectiveness of the second. (*Soltwisch v. Blum* (1973), 9 Ill. App. 3d 760, 761.) By contrast, the section 8 regulations applicable here, while clearly making noncompliance with lease terms (or other valid grounds) a prerequisite to a landlord's termination of a lease even at the end of the term, do not make compliance with lease terms an express prerequisite to the tenant's renewal. (24 C.F.R. sec 883.708(b)(1) (1985).) Furthermore, the *Soltwisch* court determined that there had, in fact, been no waiver of the breach, because the lessor simply accepted rent that was past due, not rent

accruing after the breach. *Soltwisch v. Blum* (1973), 9 Ill. App. 3d 760, 761-62.

Plaintiffs erroneously conclude that *Soltwisch* and *Lake Shore Country Club* permit a lessor to revive a waived breach in order to forfeit a lease which has not yet taken effect or to prevent lessee's exercise of an option. In fact there was no waiver in either case, and the *Lake Shore Country Club* court expressly stated that an "optionee must perform all conditions *** not waived by the optionor." *Lake Shore Country Club v. Brand* (1930), 339 Ill. 504, 522.

■ Under Illinois law, then, waiver principles clearly apply to options to renew a lease, and conditions or breaches of conditions which are waived by a lessor cannot be revived to prevent exercise of the renewal option. The trial court's conclusion that waiver principles are not applicable to the termination of a section 8 tenant's lease at the end of the lease term would deprive a lessee who has been given an automatic lease renewal option by Federal regulations of the same protection afforded all other tenants holding renewal options. It would permit a lessor to acquiesce in, or even encourage, deviations from the lease terms by the lessee, and then to rely on those very deviations to refuse renewal of the lease. This result cannot be justified from an analysis of the Federal regulations which indicate no intent to offer less protection to a tenant who receives Federal assistance than to any other tenant.

The question remains whether plaintiffs' actions constituted a waiver of the breaches of the lease by Mr. Witz. The *Okey* court noted that a determination of the issue must center on the lessor's knowledge or lack of knowledge of the lessee's breach. (*Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 992-93.) Lessor's acceptance of rent accruing after the breach, with knowledge of the breach, is a well-established indication of the waiver of the right to forfeit the lease on that ground. (96 Ill. App. 3d 987, 992. See also *Weiss v. Johnson* (1963), 28 Ill. 2d 259, 261.) There can be no doubt that Hillcrest Apartments, through its manager, was aware of the threats made by Mr. Witz. One threat was made directly to the apartment manager, and the others were reported to her. The threats occurred within a four-month period after which plaintiffs accepted rent from defendants without comment or objection for eight months.

■ As to Mr. Witz' regular complaints to other tenants about noise, the manager testified that she resolved the conflict between Mr. Witz and his first neighbor by offering each the option of moving into another apartment. At no time did she indicate to Mr. Witz that she considered his complaints to be a breach of the lease and grounds for

forfeiture. Even if Mr. Witz' actions were a breach of the lease terms, however, the rule is that "[w]here the tenant has been led by the landlord's conduct to believe that strict compliance with the terms of the lease will not be insisted on, forfeiture of the tenant's rights *** will not be permitted because of his failure to comply strictly with its terms, unless the landlord has notified the tenant that he intends to hold him strictly to the provisions of the lease in the future." (24 Ill. L. & Prac. *Landlord & Tenant* sec. 239 (1980); see *La Salle National Bank v. Helry Corp.* (1985), 136 Ill. App. 3d 897, 904 (requiring sufficient notice to the lessee of an intent to insist on strict compliance in the future); see also *1616 Building Corp. v. Rubinson* (1965), 64 Ill. App. 2d 104, 110-11.) The manager of Hillcrest Apartments silently tolerated Mr. Witz' complaints to tenants for at least an entire lease term, giving him no indication she considered his conduct to be a breach or that she would require strict compliance in the future with the lease term providing that tenants refrain from disturbing neighbors. The manager's silent acceptance of rent constituted a waiver of the breaches caused by both Mr. Witz' complaints and threats.

Finally, plaintiffs suggest that, if acceptance of rent is interpreted as a waiver of minor breaches, a lessor has no recourse against a tenant whose actions, when considered separately, might not constitute a breach of the lease but which would be a breach when viewed as a consistent course of conduct. We disagree. As discussed above, a lessor in that position may simply notify the tenant that his actions are not consistent with the lease terms and that further deviations will not be tolerated and will be followed by termination of the lease. (See *La Salle National Bank v. Helry Corp.* (1985), 136 Ill. App. 3d 897, 904.) Such notice will preserve the lessor's objection to his tenant's conduct, and acceptance of rent under those circumstances cannot reasonably be interpreted by the tenant as acquiescence. What the lessor may not do, however, is consistently accept rent from a problem tenant without objection, warning, or comment, and then attempt to forfeit the lease based on his prior behavior.

For the reasons stated, the judgment of the circuit court of McHenry County is reversed.

In light of our disposition, it is unnecessary for us to address the remaining issues raised by defendants.

Reversed.

HOPF and SCHNAKE, JJ., concur.