AMERICAN NATIONAL BANK & TRUST COMPANY, Trustee, by Village Management, Agent, Plaintiff-Appellee, v. CONNIE DOMINICK, Defendant-Appellant.

First District (4th Division)    No. 86—0713

Opinion filed April 9, 1987.

Anthony J. Fusco, Jr., and Leslie Ann Jones, both of Legal Assistance Foundation, of Chicago (Timothy Huizenga, of counsel), for appellant.

Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Defendant, Connie Dominick, appeals from an order evicting her from the apartment she had been renting for 17 months and granting possession to plaintiff, American National Bank & Trust Company, as trustee under trust No. 55494, by its agent, Village Management Company (Village Management). The trial court denied Dominick's post-trial motion but granted a stay of the order of possession pending this appeal, conditioned upon her posting of a use-and-occupancy bond.

On appeal, Dominick raises the following arguments: (1) the trial court erred as a matter of law in finding that her late payments of rent constituted material noncompliance with the federally subsidized lease; (2) the trial court erred in finding that Village Management's acceptance of Dominick's late rental payments for 17 months did not

operate as a waiver of strict compliance with the lease; and (3) the trial court erred in finding that Village Management's acceptance of the subsidized portion of the rent following service of the termination notice to Dominick did not constitute waiver of such notice.

We reverse.

BACKGROUND

In July 1983, Connie Dominick leased an apartment at 4536 South Drexel, Chicago, Illinois. This apartment is part of a multifamily housing development which is subsidized by the Federal government pursuant to section 8 of the United States Housing Act of 1937, 42 U.S.C. sec. 1437f (1985). Under section 8, the Department of Housing and Urban Development (HUD) enables tenants on public aid to acquire rental housing for a percentage of their public assistance income, while the Federal government guarantees to landlords payment of the balance of the fair rental value of the apartments.

Dominick and her four dependents receive monthly checks from Aid to Families with Dependent Children (AFDC). These checks, which constitute their sole source of income, arrive monthly between the ninth and eleventh days. Rent is due under the lease on the first day of the month. Throughout her tenancy, between May 1984 and October 1985, Dominick paid her rent between the ninth and eleventh of each month, immediately upon receipt of her AFDC check. In addition, she paid a late fee each month of $1 per day. Dominick paid $36 out of her $461 public assistance check as her base rent and the Federal government paid the balance out of a total monthly rent on the unit of $917.

Each month, Village Management sent Dominick a form letter stating that her rent was overdue and setting out the late fee schedule. Each month, Village Management nevertheless accepted Dominick's rental payments, plus the late fees.

On October 29, 1985, Village Management served Dominick with a notice of termination[1] of tenancy based on "material noncompliance" with the lease for repeated late payments of rent. As of that date, she was current in her rent and had paid all late charges for each month, including October's rent.

On November 12, 1985, Village Management filed the pending

---

[1]The notice merely informed Dominick that her tenancy "[would] be terminated on November 10, 1985" because of her material noncompliance based on the late payments and that she had ten days to "respond to the owner." There is no indication that Dominick could do anything to cure the default or retain her tenancy.

action seeking possession of the apartment. The case went to trial the following month. At trial, a witness on behalf of Village Management testified that Dominick had paid each month's rent late and had paid all late fees. The witness was aware that Dominick's explanation for the late payments was that she did not receive her AFDC checks on time. The witness also testified that Village Management sent monthly notices of the late payments and that she had talked to Dominick about the matter several times.

Dominick testified that she received her public assistance check between the ninth and eleventh of each month and immediately thereafter paid her rent. Village Management always accepted the late payments and late fees and never informed her that it would no longer accept late payments until November 1985, after service of the notice of termination.

The trial court ruled that Dominick's receipt of her public assistance check between the ninth and eleventh of each month did not excuse her from timely payment under the lease and that the Federal regulations did not compel an opposite result. The court further found that Village Management's repeated acceptances of the late rent were not grounds for an estoppel or waiver defense.

On February 26, 1986, the trial court considered Dominick's post-trial motion seeking judgment in her favor or, in the alternative, a new trial, based in part on the fact that Village Management accepted rent after serving her with notice of termination. Village Management admitted receiving rental payments from HUD following its termination notice to Dominick, but asserted that no waiver resulted because HUD's contract with Village Management was separate and distinct from the lease between Village Management and Dominick. The trial court agreed with Village Management and denied the post-trial motion.

On March 17, 1986, the trial court stayed the order of possession pending appeal conditioned upon the posting of a use-and-occupancy bond. Dominick then brought this appeal.

OPINION

Of the issues raised, we believe waiver to be dispositive. We will first consider, however, the scope of the Federal regulations and guidelines to the lease itself.

The parties' lease, a printed form approved by HUD, details the rights and obligations of the parties. Paragraph 23 provides, in pertinent part, that the landlord may terminate the lease for "material noncompliance with the terms of [the] Agreement," which includes

"repeated nonpayment of rent." That paragraph requires termination of the lease to be "in accordance with HUD regulations, State and local law, and the terms of [the] Agreement."

Village Management contends that Dominick's repeated late payments constituted sufficient grounds for termination of her lease, by its own terms. As for the waiver/estoppel defenses, Village Management apparently asserts that its oral and written notices to Dominick of her lateness preserved its termination rights. Further, Village Management relies on the trial court's statements that Dominick could have paid timely, but simply refused. Neither the record nor the law supports these contentions.

## I

■ In determining whether in fact a breach of the lease occurred, the trial court found persuasive the language of paragraph 23 and the uncontested evidence that Dominick's rental payments were made after the first of each month. By ending the analysis at that point, however, the court failed to give proper consideration to HUD's interpretation of its own lease terminology and its policy that owners and managers of federally assisted housing act reasonably.

The Director of Housing Management for HUD has issued an "Illinois Circular Letter," dated April 24, 1986, which directly addresses the problem of late payments caused by the timing of a tenant's public assistance checks.[2] By this letter, which is reproduced at the end of this opinion, HUD explicitly states that an owner shall not consider a rental payment to be late for purposes of the material-noncompliance provision of the model lease if the reason for the untimely payment is that the tenant received his or her public assistance check after the due date under the lease and the tenant tenders the rent within three business days of receipt.

The circular evidences a common-sense approach that deserves great weight, since HUD, of course, is the administrative body charged with carrying out the Congressional mandate. Moreover, the term "material noncompliance" was created and defined in the Fed-

---

[2]It is true that the trial court did not have the benefit of the circular at the time it entered the judgment. However, the record contains a 1983 affidavit of a HUD official from Washington, D.C., who states that HUD "does not expect that a private landlord would proceed to terminate the tenancy for untimely rent payments where it is evident to the landlord that the tenant was unable to timely pay his rent because the tenant received his public assistance after the rent due date." This affidavit was filed in a case originating in Hawaii, Kealowa v. Secretary of U.S. Department of Housing & Urban Development, Civ. No. 82—0594 (D. Hawaii).

eral regulations and guidelines that are incorporated into the model lease by reference. Hence, Village Management's attempted termination of Dominick's tenancy based on late rent payments cannot prevail.

Village Management nevertheless argues that the circular is inapplicable because it was issued after the December 11, 1985, judgment order and therefore cannot be retroactively applied. Further, Village Management contends that it was not "impossible" for Dominick to pay her rent on time despite her receipt of the checks mid-month and that the trial court found that she had "refused" to pay timely.

As to the latter point, we find no evidence in this record to support a finding that Dominick's failure to pay rent on the first of the month was based on anything other than the date she received her checks. In fact, Village Management's counsel conceded at oral argument that there was no evidence of any *refusal* to pay. Dominick promptly remitted her rent upon receipt and is therefore directly within the protective scope of the HUD circular.

■ As to the question of retroactive application, we believe that the circular clarifies existing law but does not reflect a change of HUD policy or interpretation. Generally, a legislative body has a continuing right to amend a law and the courts must decide the case in accordance with the law in effect at the time of the decision (*Sagittarius, Inc. v. Village of Arlington Heights* (1980), 90 Ill. App. 3d 401, 404, 413 N.E.2d 90, 93), at least unless a vested right is involved (*Hughes v. Illinois Public Aid Com.* (1954), 2 Ill. 2d 374, 378, 118 N.E.2d 14, 17). Village Management does not contend that it has a vested interest in its own interpretation of the pertinent lease terms. Nor has it demonstrated any economic loss[3] or other harm arising out of its receipt of Dominick's portion of the rent 9 to 11 days after the due date. In fact, an average late payment of $9.00 per month would be 25% of the entire rent for which she is responsible, not an insignificant amount.

Dominick was not shown to be a tenant who refused to pay rent or who took her lease obligations lightly. On the contrary, she paid her rent out of each check she received as soon as she received it. Even without the benefit of the HUD circular, therefore, it is not a reason-

---

[3]The Federal regulations which govern section 8 housing indicate that not all repeated, minor lease violations constitute material noncompliance. 24 C.F.R. sec. 881.607(b)(3) (1985) states, in pertinent part, that the term "material noncompliance" includes repeated minor violations of the lease which "have an adverse financial effect on the building." Village Management does not suggest how Dominick's late payments plus late fees cause such effect on the building.

able interpretation of the material noncompliance provision to allow a forfeiture of Dominick's lease for repeated late payment of rent under these circumstances.

The foregoing analysis demonstrates that Dominick's leasehold interest should not be forfeited because she was not actually in violation of her lease. Even if we assume she had materially breached the lease, however, the record amply supports a waiver defense.

## II

■■ ■ Village Management's repeated acceptance of the late rent operated as a waiver of strict compliance with that term of the lease. (*E.g., Vintaloro v. Pappas* (1923), 310 Ill. 115, 117, 141 N.E. 377, 378 ("receipt of rent by the lessor accruing subsequent to a breach of the conditions of the lease, with knowledge of the fact, is the waiver of a forfeiture for such breach"); *Miles Homes, Inc. v. Mintjal* (1974), 17 Ill. App. 3d 642, 647-48, 307 N.E.2d 724, 728 (failure to declare a forfeiture at the time of noncompliance is a waiver and a forfeiture cannot be declared until defaulting party is given reasonable notice of nonbreaching party's intent to demand strict compliance in the future). Accord, *Lang v. Parks* (1960), 19 Ill. 2d 223, 226, 166 N.E.2d 10, 12 (even in a time-is-of-the-essence contract, a vendor may not treat a tardy payment as grounds for forfeiture after he has accepted late payments until he first gives the vendee reasonable notice of his intention to demand strict compliance in the future). See also *Vogel v. Dawdy* (1984), 123 Ill. App. 3d 356, 462 N.E.2d 804, *aff'd* (1985), 107 Ill. 2d 68, 481 N.E.2d 679).) In *Vogel*, the appellate court noted that the waiver principle in the context of "late payment" cases is based on the theory that a party may not lull another into loose compliance with the terms of a contract and later claim imperfect compliance as a breach. 123 Ill. App. 3d 356, 360, 462 N.E.2d 804, 808.

In a recent decision of the second district appellate court, a section 8 landlord accepted rent with knowledge of his tenant's various breaches of the lease. (*Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615, 498 N.E.2d 738.) Addressing the question of whether the landlord had waived his right to declare a forfeiture of the lease, the court ruled that it had, stating, "[L]essor *** may simply notify the tenant that his actions are not consistent with the lease terms and that further deviations will not be tolerated and will be followed by termination of the lease. [Citations.]" *Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615, 620, 498 N.E.2d 738, 742.

In the pending case, Village Management never informed Dominick that it would no longer tolerate late payments. On the contrary, Village Management continued to accept her payments, plus late fees. The form letters never informed her that continued late payment would cause her to lose her lease; not one letter explicitly put her on notice of Village Management's intention to require strict compliance with the payment date provided for in the lease. Since she promptly paid her portion of the rent upon receipt of her public assistance check, and since her landlord had accepted this arrangement for 16 months, she had no reason to anticipate the termination of her tenancy for "material noncompliance" with the lease. If her landlord's conduct did not lull her into a sense of false security, it is difficult to imagine what would. Therefore, we hold that Village Management waived its right to declare the forfeiture of Dominick's lease by its failure to put her on notice of its intention, after 16 months of accepting her rent between the ninth and eleventh of each month, that it intended to require strict compliance from the seventeenth month forward.

Because of our holding, we need not determine whether Village Management also waived the termination notice and right to proceed in forcible entry and detainer by accepting the subsidized portion of the rent on Dominick's apartment after serving her with the notice of termination.

For the foregoing reasons, we reverse the order of the trial court that granted possession of the apartment to Village Management and remand this cause so that judgment may be entered against Village Management and in favor of Dominick.

Reversed and remanded for entry of the appropriate order.

McMORROW, P.J., and JOHNSON, J., concur.