No. 2--05--0673

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| RUBLOFF CB MACHESNEY, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 05--LM--80 |
| | ) | |
| WORLD NOVELTIES, INC., d/b/a | ) | |
| Pantera Coffee and Crumbs, | ) | Honorable |
| | ) | Timothy R. Gill, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, Rubloff CB Machesney, LLC, leased space in a shopping mall to defendant, World Novelties, Inc., d/b/a Pantera Coffee and Crumbs, which set up a coffee shop there.[1] The parties began to have disagreements, and plaintiff demanded that defendant strictly comply with the terms of the lease. Defendant agreed to do so. Then defendant paid its rent late. At that point, plaintiff demanded that defendant leave, but defendant refused to do so. Plaintiff filed a complaint for

---

[1]To be precise, Rubloff is the successor in interest to the original lessor, Simon Property Group, LP. This distinction is irrelevant for present purposes.

possession, and the parties filed cross-motions for summary judgment. The trial court granted summary judgment for plaintiff, and defendant appeals. We affirm.

## I. BACKGROUND

The relevant facts are few. In November 2002, defendant entered into a five-year lease with plaintiff. Under the terms of the agreement, defendant leased commercial space in the Machesney Park Mall. In return for use of this space, defendant was required to comply with the terms of the lease. These terms required defendant to operate its business "in a dignified *** manner consistent with the general high standard of merchandising in the [mall] and not in a disreputable *** manner." They also required defendant to pay rent "in advance upon the first day of each and every month."

Defendant opened up a coffee shop in the mall. Apparently, problems quickly arose, and in September 2004--less than two years after entering into the lease--defendant received from plaintiff a letter detailing numerous alleged lease violations and demanding strict compliance with the lease terms. Several of the more serious violations were based on reports received from mall security. For example, in one instance, defendant's owner, Ahmed Abatorab, allegedly told a minor girl who came into the coffee shop that she "would look good naked in that window and [she] should come back later for a special treat." In another instance, Abatorab allegedly imprisoned a family member in the back of his coffee shop. That time, mall security had responded to a report of someone yelling in the back of the coffee shop and had found Brenda Abatorab screaming at Ahmed Abatorab to "let [her] out of" the coffee shop because she "just want[ed] to go home."[2] In still other instances, Abatorab allegedly yelled that defendant's competitors did not serve real meat, harangued mall patrons to buy from defendant's coffee shop, and harassed mall employees if they either bought food

---

[2]The record does not reveal how Brenda is related to Ahmed.

from defendant's competitors instead of defendant or bought from defendant's competitors more often than they bought from defendant. Finally, in addition to many other problems, defendant allegedly failed to pay its rent on time.

All of this drove plaintiff to demand that defendant strictly comply with the lease terms, including the terms requiring that rent be paid on time and that defendant's business be operated in a reputable manner. Plaintiff stated: "[it would] accept the late rent payments through September [2004]. No further late payments, however, [would] be accepted and [defendant would be] required to strictly comply with all of the provisions of the Lease, including, without limitation, with the deadlines for all subsequent rent payments."

Defendant agreed to strictly comply with the lease. But in January 2005, barely three months after agreeing to strictly comply with the lease, defendant again paid its rent after the first of the month. Specifically, although defendant was required to pay rent by the first of January, defendant did not attempt to do so until the third. At that point, defendant's payment was refused, and a complaint for possession of the leased premises was filed.

Both defendant and plaintiff moved for summary judgment. In support of its motion, defendant cited the Illinois time computation statute (5 ILCS 70/1.11 (West 2002)), which excludes Saturdays, Sundays, and holidays from the calculation of the time for doing an act.[3] Defendant argued that, based on the time computation statute, its payment of rent was timely. For its part, plaintiff, in its motion for summary judgment, argued that the parties had agreed to exclude the time computation statute from the lease. Thus, plaintiff argued, defendant's payment of rent was late, this

---

[3]In this case, January 1 was a Saturday and a holiday, and January 2 a Sunday.

was a breach of the lease, and this breach permitted termination of the lease. The trial court granted plaintiff's motion and denied defendant's. Defendant appeals.

## II. ANALYSIS

We begin with the standard of review. Summary judgment is proper when the pleadings, depositions, admissions, and affidavits on file establish that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. See Chatham Foot Specialists, P.C. v. Health Care Service Corp., 216 Ill. 2d 366, 376 2005 . We review de novo the trial court s decision on a motion for summary judgment. Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co., 215 Ill. 2d 121, 128 2005 . In doing so, we must keep in mind that the reasons given by the court for its decision and the findings on which its decision is based are not determinative if the judgment is correct. See Northern Illinois Emergency Physicians v. Landau, Omahana  Kopka, Ltd., 216 Ill. 2d 294, 305 2005 . Accordingly, we may affirm the granting of summary judgment on any basis appearing in the record, regardless of whether the trial court relied upon that ground. Home Insurance Co. v. Cincinnati Insurance Co., 213 Ill. 2d 307, 315 2004 .

Defendant argues that the trial court erred in finding that (1) the Illinois time computation statute (5 ILCS 70/1.11 (West 2002)) did not apply to the parties' lease; and (2) assuming the statute applies, and assuming defendant breached the lease, that breach was material. We take these arguments in turn.

Defendant first argues that the time computation statute applied to the parties' lease and, therefore, defendant's payment of rent was timely. In discussing this issue, the parties spend a great deal of time arguing about whether they agreed to exclude the time computation statute from the lease. For its part, the trial court apparently based its decision, in part, on the conclusion that the parties had excluded the statute. However, we think this puts the cart before the horse. As we see it,

before determining whether the parties excluded the statute, we must determine whether the statute applies in the first place. Only if we determine that it does, do we have to consider whether the parties excluded it.

The applicability of the time computation statute is an issue of statutory construction. The primary goal of statutory construction is to determine and give effect to the intent of the legislature. In re Detention of Powell, 217 Ill. 2d 123, 135 (2005). The best indicator of legislative intent is the statutory language, which must be given its ordinary meaning. People ex rel. Birkett v. Jorgensen, 216 Ill. 2d 358, 363 (2005). When the statutory language is clear, it must be given effect without resort to other tools of construction. Village of Chatham v. County of Sangamon, 216 Ill. 2d 402, 429 (2005). Put another way, when the language of the statute is clear, basic principles of statutory construction prohibit us from looking beyond that language. See Andrews v. Kowa Printing Corp., 217 Ill. 2d 101, 106 (2005).

Here, we must determine whether the time computation statute applies to a lease provision that requires a tenant to pay rent by the first of every month. The time computation statute reads, in relevant part, as follows:

> The time within which any act provided by law is to be done shall be computed by excluding the first day and including the last, unless the last day is Saturday or Sunday and then it shall also be excluded. If the day succeeding such Saturday, Sunday or holiday is also a holiday or a Saturday or Sunday then such succeeding day shall also be excluded." (Emphasis added.) 5 ILCS 70/1.11 (West 2002).

By its plain terms the statute does not apply to the payment of rent on the first of every month. The statute speaks of computing time. 5 ILCS 70/1.11 (West 2002) ("The time *** shall be computed ***") (emphasis added)). Paying rent by the first of every month does not require the

computing of the time for doing an act. To the contrary, the time has already been computed: the rent must be paid by the first of the month. Thus, because the statute is addressed to situations in which time must be computed, it does not apply in this case.

The parties cite no cases applying the time computation statute under facts similar to those presented here. Nor has our research uncovered such a case. That said, many cases have considered the applicability of the time computation statute. And all of these cases have one thing in common: they all deal with the "computation" of time periods. See, e.g., City of Chicago v. Greene, 47 Ill. 2d 30 (1970) (time period for filing posttrial motion); Scribner v. Sachs, 18 Ill. 2d 400 (1960) (time period for filing contest of election results); People v. Ribar, 336 Ill. App. 3d 462 (2003) (time period for holding hearing on petition to rescind summary suspension of driving privileges); In re Application of the County Treasurer & ex officio Collector of Cook County, 323 Ill. App. 3d 1044 (2001) (time period for redemption following tax sale); People v. Bleitner, 227 Ill. App. 3d 257 (1992) (time period for ruling on postconviction petition); McMahon v. Chicago Mercantile Exchange, 221 Ill. App. 3d 935 (1991) (time period in which membership rights expire); Watterson v. Miller, 117 Ill. App. 3d 1054 (1983) (time period for providing statutory notice); Burgess v. Erickson, 72 Ill. App. 2d 85 (1966) (time period for filing record on appeal). The same is true of cases applying other jurisdictions' time computation statutes. See, e.g., Jorgensen v. Knutson, 662 N.W.2d 893 (Minn. 2003) (time period for insurance cancellation notice); Bank of Holden v. Bank of Warrensburg, 15 S.W.3d 758 (Mo. App. 2000) (time period for filing continuation statement); First Federal Savings & Loan Ass'n. of Salem v. Gruber, 290 Or. 53, 618 P.2d 1265 (Or. 1980) (time period for giving notice of intent to redeem). Thus, by negative implication, case law supports the conclusion that the time computation statute does not apply to the payment of rent by the first of every month.

To sum up so far, the time computation statute does not apply in this case. Because it does not, defendant's payment of rent on January 3 was a breach of the parties' lease, which required rent to be paid on or before the first of each month.

Defendant next argues that that breach was not material. The determination of materiality must turn on the facts of each case. *See William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324, 346-47 (2005).* Thus, to properly consider whether defendant's breach was material, it is necessary to begin by placing that breach in context. *Less than two years after the parties entered into a five-year lease, defendant received notice that plaintiff believed defendant to be in breach of the lease in numerous ways. For example, plaintiff believed defendant to be operating its business in a disreputable manner. This included defendant's owner allegedly making inappropriate sexual comments toward a minor girl who came into defendant's coffee shop. It also included defendant's owner allegedly imprisoning a family member in the back of defendant's coffee shop. In addition to these problems, defendant had apparently failed to timely pay rent. All of this led plaintiff, in September 2004, to request that defendant "strictly comply" with the terms of the lease, including the requirement that rent be paid on or before the first of the month. For its part, defendant agreed to strictly comply with the lease. But barely three months after agreeing to strictly comply with the lease, defendant again breached it.* The question is: was that breach material?

A lease is a contract, and, therefore, it is governed by the rules that govern contracts generally. Midland Management Co. v. Helgason, 158 Ill. 2d 98, 103 (1994); Nebel, Inc. v. Mid-City National Bank of Chicago, 329 Ill. App. 3d 957, 964 (2002). According to the Restatement (Second) of Contracts, a court should consider several factors in determining whether a breach is material. Specifically, the court should consider *(1) the extent to which the injured party will be deprived of the benefit that he or she reasonably expected (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he or she will be deprived (3) the extent to which the party*

failing to perform or to offer to perform will suffer forfeiture; (4) the likelihood that the party failing to perform or to offer to perform will cure his or her failure, taking account of all the circumstances, including any reasonable assurances; and (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. See Restatement (Second) of Contracts §241 (1981). In applying these factors, the court should keep in mind the detrimental effect that uncertainty as to performance can have on contracting parties. See Restatement (Second) of Contracts §241, Comment e, at 241 (1981). As the Restatement tells us, "defaults by the other party under other contracts or as to other installments under the same contract argue for a determination of materiality." Restatement (Second) of Contracts §241, Comment e, at 241 (1981).

After applying the above factors, we conclude that, on the particular facts of this case, defendant's breach was material. As to the first factor, plaintiff was deprived to a large extent of the benefit that plaintiff reasonably expected in demanding strict compliance with the lease. See Restatement (Second) of Contracts §241 (1981). It is well settled that a lessor may demand strict compliance with a lease, notwithstanding that the lessor did not do so in the past. Baird & Warner, Inc. v. Al-Par, Inc., 183 Ill. App. 3d 467, 472 (1989). In demanding strict compliance, the lessor may advise the lessee that further noncompliance will result in termination. Baird & Warner, 183 Ill. App. 3d at 472; Steven W. Barrick & Associates v. Witz, 147 Ill. App. 3d 615, 620 (1986). Here, plaintiff notified defendant of a number of serious lease violations, and plaintiff demanded that defendant strictly comply with the lease. Defendant agreed to do so--but quickly breached the lease again. Indeed, by paying its rent late, defendant committed one of the very breaches that had led to plaintiff's demanding strict compliance in the first place. On these facts, we think plaintiff was largely deprived of the benefit plaintiff reasonably expected. See Restatement (Second) of Contracts §241 (1981). Thus, the first Restatement factor favors plaintiff.

So, too, does the second. Again, this factor requires us to consider the extent to which the injured party may be adequately compensated for the benefit of which the breach deprived him or her. See Restatement Second of Contracts §241 1981 . Although defendant s paying interest to plaintiff for the days by which payment was overdue could compensate plaintiff financially, this would not adequately compensate plaintiff for the uncertainty caused by defendant s conduct. The desire to avoid uncertainty was no doubt one of the reasons that plaintiff demanded strict compliance. If a lessee may agree to strictly comply with a lease, and then, without fear of termination, quickly turn around and breach the lease, then there is little incentive for the lessee to strictly comply with the lease. And if that is the case, then there is little value in the demand for strict compliance. However, as noted, this demand has long been available to lessors attempting to protect their interests. See Baird Warner, 183 Ill. App. 3d at 472. Therefore, when a lessor demands strict compliance, it is likely that something short of termination will not adequately compensate him or her in the event of a breach.

Of course it could be argued that, even absent the threat of termination, the lessee has a great incentive to comply, because, if he or she does not, he or she may be liable for damages. However, as the Uniform Commercial Code 810 ILCS 5 1--101 West 2002  tells us in the context of the sale of goods, an  essential purpose of a contract between commercial men is actual performance and they do not bargain merely for a promise, or for a promise plus the right to win a lawsuit.  810 ILCS 5 2--609, Comment 1 Smith-Hurd 1993 . We see no reason why this statement should not apply with equal force in the context of commercial leases. That is to say, a history of noncompliance by a commercial lessee--such as repeated problems that lead the lessor to demand strict compliance--counsels in favor of a determination of materiality. See Restatement Second of Contracts §241, Comment e, at 241 1981 . Thus, the second Restatement factor favors plaintiff.

The third factor, which considers whether a finding of materiality will work a forfeiture Restatement Second of Contracts §241 1981  , also favors plaintiff. While it is true, as defendant points out, that

forfeitures are generally disfavored  see First National Bank of Decatur v. Mutual Trust Life Insurance Co., 149 Ill. App. 3d 743, 750 1986 , it is also true that a forfeiture is acceptable when a lessor has demanded strict compliance with a lease  see Steven W. Barrick   Associates, 147 Ill. App. 3d at 620  see also 24 Ill. L.   Prac. Landlord   Tenant §239 1980 . That is precisely what happened here.  Thus, the third Restatement factor favors plaintiff.  The fourth factor, however, favors defendant.  This is because defendant offered to perform, that is, to cure the earlier failure to perform.  See Restatement Second  of Contracts §241 1981 . Of course this factor alone is not dispositive.

The fifth and final factor requires us to consider the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.  See Restatement Second  of Contracts §241 1981 . As discussed above, when problems arose between plaintiff and defendant, plaintiff demanded strict compliance with the lease.  In response, defendant assured plaintiff that defendant would strictly comply with the lease, including the provision requiring defendant to pay rent on or before the first of the month.  But only a short time after giving its assurance, defendant failed to timely pay rent.  In other words, despite its assurance, defendant quickly failed to strictly comply with the lease.  This is not good faith and fair dealing.  It is just the opposite.  Were we to condone such conduct, a contracting party would have little incentive to abide by a promise to strictly comply with the terms of a contract.  Instead, a party could fail to comply with a contract, then promise to strictly comply with it, then quickly disregard that promise.  Such a state of contractual affairs would be untenable.  Thus, the fifth Restatement factor favors plaintiff.

In sum, the balance of the above factors weighs heavily in plaintiff s favor.  Accordingly, we find that defendant s breach was material.

### III. CONCLUSION

Where, as here, a lease requires payment of rent on the first of each month, the time computation statute does not apply.  Since the time computation statute does not apply here, defendant s payment of rent

after the first of the month was untimely. This was a breach of defendant s lease, and, based on the relevant factors, that breach was material. Therefore, plaintiff was entitled to terminate the lease. Thus, for the reasons stated, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

O'MALLEY and KAPALA, JJ., concur.