## Day-Luellwitz Lumber Company, Defendant in Error, v. Wallace L. Serrell, Plaintiff in Error.

### Gen. No. 16,620.

1. ACCORD AND SATISFACTION—*where remittance "to close" disputed account is retained an unreasonable time.* Where a draft of a third person is sent, by a debtor to a creditor, together with a statement of an account which is in dispute, and the statement and an accompanying letter show that the remittance is to be in full settlement, and the draft is retained by the creditor over three months without notifying the debtor of his refusal so to accept it, it is retained an unreasonable time as matter of law, and the creditor must be held to have accepted the remittance in full accord and satisfaction.

2. ACCORD AND SATISFACTION—*where check to "be in full" is cashed.* Where a debtor sends a check or draft, whether his own or that of a third party or a bank, for a less amount than claimed, with a statement that it is in full of the account, and the creditor reduces it to money, he will be held to have acceded to "the accord and satisfaction." If he is not willing to take the lesser amount in full, he must return the remittance without using it, and although it is not his intention to receive a bankers' or other third person's draft in full payment, if he retains it an unreasonable time without repudiation, the law infers such intention.

3. ACCORD AND SATISFACTION—*where bona fide dispute.* The law of Illinois recognizes an accord and satisfaction by the payment and acceptance of a sum less than that due if there be a bona fide dispute as to the sum which should be paid by the debtor to the creditor.

4. QUESTIONS OF LAW AND FACT—*reasonable time.* While the term "reasonable" is a relative term and the facts of the particular controversy must be considered before the question of what constitutes a reasonable time can be determined, yet, when the facts of the case are clearly established or undisputed, the question of what is a reasonable time within which an act should have been done becomes a question of law.

5. EVIDENCE—*effect of conversations after commencement of suit.* A conversation during the pendency of a suit does not alter the rights of the parties at the commencement of the cause.

Error to the Municipal Court of Chicago; the Hon. MCKENZIE CLELAND, Judge, presiding. Heard in this court at the October term, 1910. Reversed. Opinion filed January 27, 1913. Rehearing denied February 10, 1913.

**Statement by the Court.** April 2, 1910, a judgment was rendered by the Municipal Court of Chicago on the verdict of a jury for $805.50 in favor of the Day-Luellwitz Lumber Company, a corporation having its headquarters in the State of Washington, defendant in error here, plaintiff below, against Wallace L. Serrell, plaintiff in error here, defendant below. To reverse this judgment a writ of error has been sued out from this court.

The suit was brought by the Lumber Company against Serrell, who is a wholesale lumber dealer in Chicago, for the contract price of certain lumber sold by it to him, amounting to $1,066.50, from which was to be deducted freight paid by the defendant Serrell in the sum of $261.00. The balance was $805.50, for which this judgment was rendered. There was no dispute as to the amounts above indicated, but the defendant claimed that he had settled this balance of $805.00 by the credit of various claims held by him for damages against the plaintiff arising out of former relations and transactions, and contemporaneously therewith the payment of the equivalent in cash of $428.50 by a draft of that amount of the First National Bank of Chicago on Dexter, Horton & Co. of Seattle. This draft the defendant sent by registered mail to the plaintiff, together with the following statement of account:

"CHICAGO, ILL., Oct. 22, 1907.

"W. L. SERRELL,
    1112-1113 Monadnock Block,
            Chicago, Ill.
                To Day-Luellwitz Lumber Co.     Dr.
Voucher No. 1288               Spokane, Wash.
Invoice May 18, 1907, N. P. 41216          $1,066.50
                Freight,                        261.00
                                           _____
                                           $  805.50
Charged back on non-shipment our orders,
        (See our letter to-day)               377.00
                                           _____
                                           $428.50

"Memorandum of Charge Back.
Order # 1044

| | |
|---|---|
| One car estimated 20,000 est. profit $3.50 | 70.00 |
| Order # 1064 | |
| 3 cars due estimated 23,000 each 69,000 $2.00 | 138.00 |
| Order # 1071 Penalty charge back | 100.00 |
| 2 cars due estimated 23,000 each 46,000 $1.50 | 69.00 |
| | $ 377.00 |

"Received of W. L. Serrell

Four Hundred Twenty Eight and 50/100 Dollars in full of above account.
$428.50.

(Sign here)————————

"Sign and Return Voucher promptly. Papers must not be detached."

At the same time and in the same enclosure was a letter from the defendant to the plaintiff, in which he states that he is attaching the statement before given, "showing losses to our account" and Seattle exchange for balance due on the account, "as we deem this is the only right and proper way to close the matter up." The letter explained further the claims defendant was making against the plaintiff, and said: "In making this statement and remittance we are acting upon the advice of counsel." It concluded: "We certainly think that we are treating you very just in the matter."

It was formally admitted on the trial by the counsel for the plaintiff, that at the time this check was sent there was a dispute between the plaintiff Company and the defendant as to the amount which the defendant should pay the plaintiff.

The registered envelope containing the drafts, statement of account and letter was received by the Day-Luellwitz Lumber Company at Spokane, Washington, October 26, 1907, as appears by the Post Office Registry receipt of that date, which was returned to the de-

fendant and was received by him on October 30, 1907. Nothing further seems to have been said or done in the matter either in the way of correspondence or otherwise, by either of the parties, until February 10, 1908.

Assuming the evidence offered for the plaintiff to be correct as well in the rather immaterial particulars in which it differs from the defendant's as in those in which it agrees with it, the first mention of this draft after its reception was about February 8, 1908, in a conversation between Mr. Wilcox, a collecting agent for the plaintiff, and the defendant. Wilcox, who was collection manager for a Lumbermen's Association, called on the defendant for payment of the account in full, ignoring the check. "I knew about the check," Wilcox says, "but it wasn't attached to the papers then sent to me by the Company." Mr. Serrell's version of the conversation about the draft is that he (Serrell) referred to having sent it and Wilcox told him he didn't know of it.

The next conversation about the draft, according to Wilcox's testimony (offered for the plaintiff) was in the latter part of April, 1908, in Serrell's office. Wilcox called there, apparently with the papers pertaining to the desired collection, this time including the draft. He says: "I told Mr. Serrell that the Day-Luellwitz Lumber Company informed me that they could not accept this $428.50 draft, and that under the circumstances we would return it. He said, 'I have no use for the money and you can keep it,' so I left the draft in the files."

Mr. Serrell's testimony concerning this conversation is: "Wilcox wanted to know if I wouldn't take the check and deposit it in my bank account and have the benefit of the use of the money until the case was settled. I told him my books showed the account entirely closed and I wasn't interested in it."

June 8, 1908, the present suit was brought by the Lumber Company against Serrell. Mr. Wilcox testified that in August, 1909, which was more than a year

after the suit was brought in the Municipal Court, but more than six months before it was tried, Mr. Serrell in his (Wilcox's) office said that if "we" (apparently meaning the collection agency of which Wilcox was manager) "still had that check, he could use it." Wilcox says, "I told him that we did not have it—he would have to see you; it was in your possession," that is, in the hands of the lawyers who had brought and were conducting the suit.

Serrell made what we think was probably intended as a denial of having used this language at any time, but which counsel for plaintiff construe as referring only to a conversation prior to August, 1909. But this is immaterial. The alleged conversation, if it took place, could not alter the rights of the parties at the beginning of this suit.

Counsel for the defendant gave to counsel for plaintiff the statutory notice to produce the draft and accompanying papers necessary to justify secondary evidence. This notice the counsel for plaintiff offered in evidence and the court allowed it to be read to the jury, but afterwards struck it out and on the request of counsel for defendant instructed the jury that it was not in evidence and must be disregarded.

The papers themselves—draft, statement of account and letter—were produced by the plaintiff in obedience to the notice and offered in evidence by the defendant. They were marked as exhibits and copies of them appear in the transcript of the evidence. There is no showing as to the present custody of the originals.

At the opening of their case, before introducing any evidence, counsel for the plaintiff tendered the three papers to the defendant, whose counsel answered, "We decline them."

The court submitted the cause to the jury with oral instructions which left it to them as a question of fact whether "the plaintiff received this check and the claim for damages and retained it *with the intention*

of settling the account between the plaintiff or defendant,'' but further told them that if plaintiff received the check ''without the intention of its becoming a settlement between the parties, yet if he retained it *an unreasonable time* in his possession without returning it or offering to return it to the defendant,'' then that ''would amount to an intention'' or ''disclose an intention'' * * * ''upon the part of the plaintiff to accept that check in full settlement of the account between the plaintiff and the defendant.'' He left it to the jury to determine whether the check was ''retained by the plaintiff an unreasonable time without notifying the defendant or returning it.''

After the finding by the jury in favor of the plaintiff the defendant moved for a new trial. This was denied, and as before stated, judgment entered on the verdict.

In this court it is chiefly argued by the plaintiff in error that the verdict and judgment were against the law and the evidence, in that ''the undisputed facts show as a matter of law that there was an accord and satisfaction. Therefore the defendant's motion for a peremptory instruction in his favor should have been allowed.''

Plaintiff in error calls attention, however, to the improper reading to the jury, as evidence, of the notice for production of the papers involved and suggests that the ruling of the court striking it from the evidence might not have cured the error.

The defendant in error, to sustain the judgment insists that if there was any error in the introduction of this evidence, it was cured by the subsequent ruling of the court, that it was a question of fact to submit to the jury whether the passive retention of a draft without cashing it or complying with the stated conditions on which the sender said it should be received could constitute an accord and satisfaction, and that if the case turned on the time during which the check was retained, it was for the jury to say whether such

time was unreasonable,—that therefore no peremptory instruction should have been given for the defendant, as maintained by him, and that the verdict and judgment are in accordance with and not against the law and the evidence.

George C. Otto, for plaintiff in error.

Fred H. Atwood, Frank B. Pease and Charles O. Loucks, for defendant in error; Burrell J. Cramer, of counsel.

Mr. Justice Brown delivered the opinion of the court.

The law of Illinois recognizes an accord and satisfaction by the payment and acceptance of a less sum than that due, if there be a bona fide dispute as to the sum which should be paid by the debtor to the creditor. Hayes v. Massachusetts Mut. Life Ins. Co., 125 Ill. 626; Ostrander v. Scott, 161 Ill. 339; Lapp v. Smith, 183 Ill. 179; Canton Union Coal Co. v. Parlin & Orendorff Co., 215 Ill. 244.

If the less sum is sent in a check or draft of the debtor, with the statement that it is in full of the account, and the creditor reduces it to money, he will be held to have acceded to "the accord and satisfaction." If he is not willing to take the lesser sum in full, he must return the check without using it. This seems to be the law of Illinois as declared by the Supreme Court. Ostrander v. Scott, supra; Lapp v. Smith, supra; Canton Union Coal Co. v. Parlin & Orendorff Co., supra; Stan v. Regelin, 147 Ill. App. 550.

The case at bar turns entirely on two questions. The first is whether, when the check or draft, sent on these conditions by the debtor to the creditor is not that of the sender, but a bank draft or cashier's check drawn by one banking institution on another, the retention for an unreasonable time of the same by

the creditor, without presentation, but without notice to the debtor that it is repudiated or any offer made to return it, is equivalent to the use of it. This question we answer in the affirmative. A draft or check of any third person and *a fortiori* of a banking institution is not the same thing in fact, and we do not think it is the same thing in law, when so sent, as the debtor's own check or draft. In the case of the sender's own check or draft, it is but his order on funds which can not be disturbed or withdrawn from his control and use until it is presented; but if it be a cashier's check it is something for which the debtor has paid consideration and which has tied up out of his use and control the amount which he paid or is charged for it unless and until it is returned to him. Therefore, while it may well be that some affirmative use of the debtor's check or draft may be necessary to bind the creditor, the mere neglect or refusal promptly to return the check of a third party, and thus place the debtor in *statu quo,* might with equal reason be held to foreclose such a creditor from subsequent action. The return of the cashier's check after an unreasonable delay practically changes the condition of things no more than would the voluntary refunding to the debtor after the same length of time of the amount for which his own check had been cashed promptly on reception.

This was also the theory on which the case was submitted to the jury by the judge below. Although we should differ from the implication made in his instructions, that it was entirely a question of *intention,* but that the *intention* must be inferred from an unreasonable retention, and deem the more accurate statement to be that although there was no intention on the part of the creditor at any time to receive the draft in question as full payment, the law would hold that he had so taken it if he had retained it an unreasonable time without repudiation; yet this difference in statement would lead to no practical difference in the disposition of the cause.

The whole practical effect of the court's instructions under the evidence was to leave to the jury the single question: Did the defendant in error retain the bank draft in question an unreasonable time without repudiating or returning it? And the second question on which this writ of error turns is, whether this question was one of fact for the jury or of law for the court. In answering this question we are constrained to differ from the learned judge below and from counsel for defendant in error.

While it is true, as has been said, that "to give a specific meaning to the word 'reasonable' is like trying to count what is not number and measure what is not space;" Altschuler v. Coburn, 38 Neb. 881, 890.

And that "reasonable is a relative term and the facts of the particular controversy must be considered before the question as to what constitutes a reasonable delay can be determined;" In re Nice v. Schreiber, 123 Fed. 987, 988.

Yet we think that the weight of authority supports the proposition that when the facts of a case are clearly established or undisputed—a condition which we think practically exists in this case—the question of what is a reasonable time within which an act should have been done becomes a question of law. Hill v. Hobart, 16 Me. 164, 168; Morse v. Bellows, 7 N. H. 549; McFadden v. Henderson, 128 Ala. 221, 230, 231; Hickman v. Shimp, 109 Pa. St. 16, 20.

If it was a question of law in this case for the court below, it is a question for us to decide here, and in doing so to dispose finally of the cause.

No questions of fact exists in it. It depends on the application of the law to undisputed facts.

The defendant in error is not shown to have intended to accept in full settlement the bank draft sent to it by the plaintiff in error, but it received it and held it practically three months and a half at least without returning or offering to return it or notifying the plaintiff in error of an intention or want of inten-

tion to accept it as the settlement it was insisted by the plaintiff in error that it must be, if accepted.

In our opinion the court below, with this state of things clearly established, might consistently have instructed the jury peremptorily for the plaintiff or for the defendant, accordingly as he held this three months and a half a reasonable or an unreasonable time for the retention of the draft. We think he should have held it an unreasonable time and instructed the jury therefore peremptorily for the defendants. We hold it an unreasonable time under the circumstances of this case. To hold it reasonable would be against all the analogies of the law of negotiable paper. A check or draft of this sort is not intended for indefinite circulation or hoarding. It is supposed to be negotiated promptly or presented promptly. If held but a short time even, the holder incurs the risk of the intermediately accruing insolvency of the drawee and drawer. The neglect of the defendant in error to return or act in any way on the draft was equivalent in its effect on the plaintiff in error to cashing it, holding the money for three months or more and then offering to return it. The defendant in error must be held to have accepted the draft in payment of its account against the plaintiff in error, and the jury should have been so instructed.

The judgment of the Municipal Court is therefore reversed.

*Reversed.*