# ROYAL AMERICAN MANAGEMENT, INC. v GODFREY
## Case No. CO85-140
County Court, Orange County

October 27, 1985

**APPEARANCES OF COUNSEL**

**William H. Jeter, Jr.** for plaintiff.

**Jay Rose** for defendants.

## OPINION OF THE COURT

JAMES C. HAUSER, County Judge.

This cause came before this Court as a non-jury trial in which the landlord is attempting to evict the tenants based upon a breach of the lease. The evidence in this case has been extensive. The Court has been faced with numerous complex and delicate issues of law.[1]

---

[1] See Order on Defendant/Tenant's Motion to Dismiss, dated June 13, 1985 in which this court certified two issues to be of great public importance:

 a) Whether Florida law applies to federal Section 8 tenancies, if Florida law is more restrictive than federal law.

 b) Is a landlord's notice defective under Fla. Stat. 83.56(2)(b) if it fails to inform the

## FACTS

The landlord and tenant signed a written lease on April 4, 1984. (Plaintiff's exhibit 1). According to the lease, paragraph 3, the tenant was required to pay $279.00 rent. However, the landlord also received a subsidy from the federal government of $209.00 per month, bringing the total amount of rent received by the landlord to $488.00 per month. (Defendant's exhibit 2).

### I. BREACH OF LEASE

On November 30th, a tenant, Mrs. Kohler, who is 60 years old, claimed she heard the stereo of Mrs. Godfrey blaring from the Godfrey apartment. Mrs. Kohler then reported the incident to the apartment manager, Ms. Clemmer. Ms. Clemmer then handed Mrs. Godfrey a notice to quit and vacate - see Notice to Quit and Vacate dated November 30th attached to the complaint. When Mrs. Godfrey received the notice she began swearing at Mrs. Kohler.

Later that evening, Mr. Godfrey returned from work. When he heard about the eviction notice he got very upset. He immediately confronted Mrs. Kohler and began swearing at her.[2] Mr. Godfrey had not yet changed from his work clothes and both his appearance and attitude were terrifying to Mrs. Kohler.

Ms. Clemmer heard the screaming and asked both parties to come to her office. Mr. Godfrey obeyed her request, but Mrs. Kohler refused, because she was too scared to do so. Mr. Godfrey then began swearing at Ms. Clemmer and slammed one or two doors.

Based on the above facts, this Court must decide whether there were sufficient grounds to terminate the tenant's lease.

## STATEMENT OF LAW

Fla. Stat. 83.56(2)

a) If such noncompliance is of a nature that the tenant should not be given an opportunity to cure it or if the noncompliance constitutes a subsequent or continuing noncompliance within 12 months of a written warning by the landlord of a similar violation, deliver a written notice to the tenant specifying the noncompliance and the landlord's intent to terminate the rental agreement by reason thereof. Examples of noncompliance which are of a nature that the tenant should not be given an opportunity to

tenant that any future violations must be similar to the violations stated in the notice?

[2] Mr. Godfrey admits swearing by said God d__n, but denies using the word f__.

**57**

cure include, but are not limited to, destruction, damages or misuse of the landlord's or other tenants' property by intentional act or a subsequent or continued unreasonable disturbance. In such event, the landlord may terminate the rental agreement and the tenant shall have 7 days from the date the notice is delivered to vacate the premises. The notice shall be adequate if it is in substantially the following form:

"You are advised that your lease is terminated effective immediately. You shall have 7 days from the delivery of this letter to vacate the premises. This action is taken because (cite the noncompliance)."

b) If such noncompliance is of a nature that the tenant should be given an opportunity to cure it, deliver a written notice to the tenant specifying the noncompliance, including a notice that, if the noncompliance is not corrected within 7 days from the date the written notice is delivered, the landlord shall terminate the rental agreement by reason thereof. Examples of such noncompliance include, but are not limited to, activities in contravention of the lease or this act such as having unauthorized pets, guests, or vehicles; parking in an unauthorized manner or permitting such parking; or failure to keep the premises clean and sanitary. The notice shall be adequate if it is in substantially the following form:

"You are hereby notified that (cite the noncompliance). Demand is hereby made that you remedy the noncompliance within 7 days of receipt of this notice or your lease shall be deemed terminated and you shall vacate the premises upon such termination. If this same conduct or conduct of a similar nature is repeated within 12 months, your tenancy is subject to termination without your being given an opportunity to cure the noncompliance."

The Court is persuaded that the incident in question is of such a nature that the tenants should have been given an opportunity to cure the violation of Fla. Stat. 83.56(2)(b). The conduct of the tenants, although not exemplary, consisted of:

1) playing the stereo too loudly; and

2) swearing at another tenant and manager.

Neither of these incidents is of such a serious nature that the tenant should not be given an opportunity to cure. Some of the examples listed under Fla. Stat. 83.56(2)(b), which permit the tenant to cure the violation, such as failure to properly park the vehicle or keep the premises clean are analogous to the violations in this case.

58

The examples listed under Fla. Stat. 83.56(2)(a) in which a tenant should not be given an opportunity to cure are of a much more serious nature. Such examples include the destruction of property, or a *continued* unreasonable disturbance. The incident involved was not a continual violation, but an isolated one.

Therefore, based on the facts of the case, the landlord's request for possession must be DENIED.[3]

## II. DOES THE LANDLORD'S ACCEPTANCE OF RENT FROM HUD CONSTITUTE A WAIVER UNDER FLA. STAT. 83.56(5)?

Both parties stipulated and agreed to the following.

1) After the landlord served its notice on the tenants to terminate the lease in November, the landlord refused to accept any rents from the Godfreys.

2) The landlord continued to accept rent of $209.00 per month from HUD from December 1984 through May 1985.

3) In May the landlord returned to HUD all the money it had received from them.

The court is absolutely persuaded that the landlord, by accepting rent from HUD, never intended to waive its right to evict the Godfreys. Thus, under no circumstances can the Godfreys claim they were misled by the landlord's intentions when it accepted rent from HUD. However, the waiver in question is not a creature of common law, it is a creature of statute.

### STATEMENT OF LAW

Fla. Stat. 83.56(5)

"If a landlord accepts *rent* without actual knowledge of a noncompliance by the tenant . . . . the landlord . . . waives his right to terminate the rental agreement." (Emphasis added).

The landlord claims that the money paid by HUD to the landlord is not rent; this Court cannot agree. The money paid by HUD to the landlord on behalf of the tenant subsidizes the tenant's *rent*. It is difficult to imagine how one would classify these payments, if it were not rent.

The Court understands the landlord's dilemma in accepting the rent

---

[3] If an appellate court were to reverse this Court's decision of June 13, 1985, the Court may very well have found the tenant's continued conduct warranted eviction.

from HUD for the Godfrey apartment. The Court notes that Fla. Stat. 83.56(5) was passed in 1973 prior to the implementation of the Section 8 subsidy program. This court believes that the landlord's remedy lies in changing the statute to exempt the acceptance of rent subsidies as grounds for a waiver.

Therefore, this Court also rules that the landlord's acceptance of rent from HUD under 83.56(2)(b) waived his right to evict the tenant.

## III. TENANT'S CLAIM

This Court ruled orally there was insufficient proof of retaliatory eviction. Also, there was no proof whatsoever as to damages suffered by the tenant. Based on the foregoing, the tenant's counterclaim and affirmative defense of retaliatory eviction are dismissed.

## IV. CERTIFICATION

The Court certifies the following question:

If a landlord receives a subsidy from HUD, does the acceptance of that subsidy waive the landlord's right to evict the tenant under Fla. Stat. 83.56(5).