195 Ill. App.3d 196 (1990)
551 N.E.2d 272
EAST LAKE MANAGEMENT AND DEVELOPMENT CORPORATION, Plaintiff-Appellant,
v.
LOUDELL IRVIN, Defendant-Appellee.
No. 1-88-0398.
Illinois Appellate Court  First District (6th Division).
Opinion filed February 9, 1990.
*197 Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellant.
Timothy Huizenga, Antoinette D. Moore, and Jack Tibbetts, all of Legal Assistance Foundation, of Chicago, for appellee.
Reversed and remanded.
PRESIDING JUSTICE LaPORTA delivered the opinion of the court:
Plaintiff filed suit for possession of the apartment occupied by defendant under a written lease. Plaintiff alleged defendant's breach of certain lease provisions. On defendant's motion, the trial court entered summary judgment in favor of defendant, and plaintiff appealed.
Plaintiff on appeal argues the trial court committed error in granting summary judgment and in finding that plaintiff had waived defendant's breach of the lease by its acceptance of housing subsidy payments from HUD subsequent to serving a termination notice on defendant.
Plaintiff, as lessor, and defendant, as lessee, entered into a written lease on August 4, 1983, for apartment unit 2B at 4048 South Lake Park Avenue, Chicago, Illinois, for the period beginning September 1, 1983, and ending August 31, 1984, for a monthly rental of $33 with the lights and electric to be paid by the tenant. The lease provided that after the expiration of the initial lease period, the lease would continue on a month-to-month basis unless terminated according to the provisions of the lease.
The record discloses two written amendments to the lease. On November 19, 1985, the parties executed an amendment to the lease which referred to a lease agreement for the period from November 1, 1985, to July 1, 1986, with tenant's rental payment obligation to be $44 per month. On or about August 1, 1986, the lease was extended *198 by written agreement from that date until July 31, 1987, with tenant's rental obligation to be $36 per month.
Plaintiff operated the building in which the apartment was located as a subsidized housing complex pursuant to a contract with the United States Department of Housing and Urban Development (HUD), under a section 8 program of the United States Housing Act of 1937 (42 U.S.C. § 1437f (1985)) whereby a housing assistance subsidy is paid to the landlord in addition to the tenant's rental payment specified in the lease for a given unit to more closely compete with rentals available in the non-subsidized-housing market. The defendant qualified for subsidized housing and executed the lease for apartment 2B in plaintiff's building.
The lease agreement included the defendant's obligations "not to destroy, damage or remove any part of the unit, common areas, or project grounds" and "not to * * * make or permit noises or acts that will disturb the rights or comfort of neighbors." The tenant agreed "to keep the volume of any radio, phonograph, television or musical instrument at a level which will not disturb the neighbors."
On August 13, 1987, the plaintiff served a notice of termination of tenancy on the defendant with a final date of occupancy on August 23, 1987, citing damage to property, loud noise, fighting, loitering in the common areas and generally disturbing other building residents as the grounds for termination of the lease. The record discloses the defendant was served personally and by mail. The defendant did not vacate the apartment, and the plaintiff filed a forcible detainer suit for possession on September 14, 1987.
The defendant moved for summary judgment. The defendant argued there, as here, that the plaintiff in its answer to interrogatories acknowledged its receipt of HUD housing subsidy payments for defendant's apartment for the months of September and October 1987, following the service of the termination notice on defendant, and therefore this action constituted acceptance of rent, a waiver of the alleged breach and plaintiff's election to reinstate the tenancy. The defendant does not challenge the violations of the lease recited in the termination notice nor are the validity and service of the notice contested. The parties agree that plaintiff accepted no rental payments from defendant subsequent to service of the termination notice.
On January 6, 1988, the trial judge entered summary judgment in favor of defendant and dismissed the case. The court found that "the plaintiff has waived its notice by accepting H.A.P. payments from the Department of Housing" and found that "the acceptance of *199 the HUD payment constitutes rent." This appeal followed.
We first consider plaintiff's argument that HUD's housing assistance payments are not the equivalent of rent, as that term is generally understood.
 1 The landlord's acceptance of rent from a tenant following a notice of termination of the tenancy for violation of the lease provisions is generally considered to be a waiver of the breach which operates to reinstate the lease. (Vintaloro v. Pappas (1923), 310 Ill. 115, 117, 141 N.E. 377, 378.) The landlord who accepts rent payments after terminating a lease waives the right to terminate based upon circumstances of which he had knowledge at the time of acceptance. Okey, Inc. v. American National Bank & Trust Co. (1981), 96 Ill. App.3d 987, 991-92, 422 N.E.2d 221, 225; American National Bank & Trust Co. v. Dominick (1987), 154 Ill. App.3d 275, 281, 507 N.E.2d 512, 516.
The lease between plaintiff and defendant here includes the following pertinent language:
"3. * * * Tenant agrees to pay the monthly rent * * * on the date the rent is due. * * * The Tenant understands that this monthly rent is less than the market (unsubsidized) rent due on this unit. This lower rent is available * * * because HUD makes monthly payments to the Owner on behalf of the Tenant. The amount, if any, that HUD makes available monthly on behalf of the Tenant is called the tenant assistance payment * * *."
Because the housing assistance payments (HAP) contract is not part of the record, we look to the language of the statute by which subsidized housing under HUD's section 8 programs is administered. The United States Housing Act of 1937, section 8, as amended (42 U.S.C. § 1437f(a) (Supp. 1985)), was enacted "[f]or the purpose of aiding lower-income families in obtaining a decent place to live and of promoting economically mixed housing" and, in furtherance of its purpose, the Act provided that "assistance payments may be made with respect to existing housing in accordance with" the statute (42 U.S.C. § 1437f(a) (Supp. 1985)). The Act provided a formula to determine the value of a subsidized apartment based on a fair market rental value amount in a non-subsidized-housing market, which value is required to be adjusted annually. (42 U.S.C. § 1437f(c)(1) (1982).) Thereafter, based on the apartment's rental value, the qualified tenant pays a monthly rent amount based on his income and HUD pays the balance to the landlord in the form of a subsidy referred to as a housing assistance payment. 42 U.S.C. § 1437f(c)(1) (1982).
*200 The lease which the trial court here was asked to construe is the written agreement between the plaintiff as landlord and the defendant as tenant. The lease initially recited a monthly rental, to be paid by the tenant, which was adjusted from time to time during the tenancy. When the landlord served the notice of termination on August 13, 1987, the tenant's monthly rent payment was $36. The tenant occupied the apartment as a holdover tenant under the terms of an amendment to the original lease which extended the lease for a one-year period ending on July 31, 1987.
Defendant cites a number of cases from other jurisdictions in support of her argument that the HUD payment is rent and that the plaintiff's acceptance of the HUD payment after serving the notice on defendant constitutes a waiver of the notice of termination of tenancy. Four of those cases are trial court opinions rather than opinions of a court of review, and we therefore find they have no precedential value for our consideration of the issues before us.
Defendant cites Holbrook v. Pitt (7th Cir.1981), 643 F.2d 1261, for the proposition that as tenant she is the third-party beneficiary of the contract between HUD and plaintiff and that she has enforceable rights with regard to the housing assistance subsidy payments. Holbrook is distinguishable on its facts. In that case, plaintiff was a tenant in an apartment which qualified for HUD housing assistance subsidies. The landlord failed to certify the tenant for more than six months after the HUD contract was signed with the result that no HUD payments were made to the landlord for the apartment occupied by the tenant during that period of time. The court found that qualified tenants had entitlement rights as third-party beneficiaries under the HUD contracts to be certified and that the tenant litigant was entitled to retroactive payments of HUD subsidy payments. Tenant sued the landlord for the subsidy payments, and the landlord filed a third-party complaint against HUD. The landlord was dismissed on his own motion, and the dispute was determined based on the tenant's rights against HUD. Because of factual considerations which are not common to the facts in our case, Holbrook does not support defendant's position here.
In support of its argument for reversal of the trial court's dismissal of the suit for possession and its ruling in favor of defendant on her summary judgment motion finding that acceptance of HUD housing assistance subsidy payments constitutes acceptance of rent, plaintiff cites two Ohio appellate court cases which we find persuasive.
In National Corp. for Housing Partnerships v. Chapman (1984), *201 18 Ohio App.3d 104, 481 N.E.2d 654, the tenant, who frequently paid her $21 monthly rent late and who had been warned by the landlord that her rent must be paid when due, was served with a notice to terminate. Following the service of notice and refusal to accept tenant's late offer of rent payment, the landlord accepted HUD payments for the apartment. In affirming the judgment of the trial court granting the landlord possession, the appellate court considered whether HUD payments had the same legal effect as if they were rent payments made by the tenant. The court examined the terms of the landlord/tenant agreement which provided in part that the landlord could terminate the lease for the tenant's noncompliance with its terms including, but not limited to, payment of rent. The court then examined the relevant provisions of the Federal statutes. The court affirmed the trial court and held that
"a tenant may be evicted for failing to pay rent or a portion of the rent even though the landlord has received partial payment in the form of federal housing assistance. [Citation.]
The rent subsidy, while providing a personal benefit to a qualified tenant such as Chapman, is not personal in the sense that it is her money. The fact that Spring Hill continued to receive the rent from HUD for Chapman's account does not entitle Chapman to avoid her contractual obligations." National Corp. for Housing Partnerships v. Chapman (1984), 18 Ohio App.3d 104, 106, 481 N.E.2d 654, 656.
In Sandefur Co. v. Jones (1982), 9 Ohio App.3d 85, 458 N.E.2d 390, because of the tenant's delinquency in rent payments, the landlord served notice to vacate the premises. The court found that because the subject housing was federally subsidized, and the owner accepted substantial rent subsidies from the Federal government, the plaintiff waived ordinary rights of a landlord and instead was bound by the statutory regulations of the Federal government. The issue determined by the court was the sufficiency of the notice to terminate and does not discuss the issue in our case of subsequent subsidy payments by HUD.
Defendant attempts to distinguish the Chapman and Sandefur cases from our case based on tenants' failure to pay rent in a timely fashion, while defendant in the present case was charged with noncompliance of the lease prohibitions against noise and damage to property. We find this argument to be a distinction without a difference in our consideration of the issue raised. All acts are tenant failures to comply with the terms of the lease and as such are appropriate grounds for a notice to terminate the lease.
*202 The validity of the notice of termination, the grounds for termination recited in the notice and the propriety of service of the notice on defendant are not challenged by either party. For purposes of this appeal, we conclude that the appropriate HUD regulations with regard to these requirements have been met.
 2 When a subsidized unit becomes vacant following owner's eviction of an eligible tenant, HUD regulations provide the owner is entitled to receive vacancy payments for 60 days or more upon a showing that he is actively attempting to fill the vacancy. (20 C.F.R. §§ 880.611, 881.611.) We believe the statutory intention is to reserve the subsidized unit for a subsequent qualified low-income tenant. Housing assistance subsidy payments under plaintiff owner's contract with HUD serve the same purpose. Both are intended to induce the owner to participate in the section 8 low-income housing program and offer some protection to the owner from monetary loss in doing so. We find that under these regulations the owner's acceptance of HUD payments does not constitute acceptance of rent or a waiver of the right to terminate the lease for noncompliance with its terms.
The appeals court in Tullahoma Village Apartments v. Cyree (Tenn. Ct. App. Feb. 7, 1986), No. 85-206-II, 20 Clearinghouse Rev. 1560, in reviewing the amount of the appeal bond set by the trial court to be posted by an evicted tenant of subsidized housing, found that the local statute which required a bond in the sum of three times the monthly rent required the tenant to post bond in the sum of $78 (three times her monthly rent of $26) and reversed the lower court's requirement of a bond in the sum of $978 (three times market value of $329). In reaching its decision, the appeals court reasoned:
"[W]e think the trial judge erroneously included the market or unsubsidized amount of rent in the bond amount.
* * * [t]he lease states that `* * * Tenant agrees to pay a rent of $26.00 per month.' That paragraph later provides that the market or unsubsidized rent of the apartment is $329.00 per month.
* * * The terms `unsubsidized rent' and `market rent' are not to be found in [local statute] and * * * we cannot give the statute a construction that would encompass those terms. `Rent' is all that is contemplated by [local statute] and only the `rent' provided in the lease may be considered under the statute, and not the `market rent' or `unsubsidized rent.' * * * We think the term `rent' in its natural and ordinary meaning, refers to the money or compensation which passes from the tenant to the *203 landlord. 52 C.J.S., Landlord and Tenant, Sec. 462. Therefore, the `rent' in this case is the amount of $26.00 per month, regardless of the landlord's arrangement with HUD regarding the market rent." Tullahoma Village Apartments v. Cyree (Tenn. Ct. App. Feb. 7, 1986), No. 85-206-II, slip op. at 6, 20 Clearinghouse Rev. 1560.
We find that the defendant had an obligation to comply with the provisions of the written lease agreement with plaintiff, including, but not limited to, payment of monthly rent of $36, and upon her violation of any of its terms the landlord was entitled to terminate the lease. All of the agreements between the plaintiff and the defendant were included in the written lease.
 3 We further find that plaintiff's written agreement with HUD to provide subsidized housing did not impose on the plaintiff owner any obligations to the tenant to forego its right to terminate the tenancy for lease violations nor did the agreement construe plaintiff's acceptance of housing subsidy payments as rent such as would invalidate the termination notice.
The trial court erred in its finding that plaintiff had waived its notice of termination by accepting HUD housing assistance subsidy payments and in its finding that HUD payments constitute rent.
The dismissal of plaintiff's suit was error, and the summary judgment entered in favor of the defendant on January 6, 1988, is reversed.
For all of these reasons, the judgment is reversed and remanded for further proceedings consistent with this opinion.
Reversed and remanded.
McNAMARA and EGAN, JJ., concur.