MIDLAND MANAGEMENT COMPANY, Plaintiff-Appellant, v. RONALD HELGASON, Defendant-Appellee.

Second District No. 2—92—0331

Opinion filed February 8, 1993.

Sanford Kahn, of Sanford Kahn, Ltd., of Chicago (Richard W. Christoff, of counsel), for appellant.

Jerry Brask, of Prairie State Legal Services, Inc., of St. Charles (Sarah Megan, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Midland Management Company, appeals from an order in a forcible entry and detainer action which determined that defendant, Ronald Helgason, was prejudiced and his due process violated by plaintiff's trial testimony. Plaintiff also appeals the ruling that plaintiff waived its right to forfeiture of the lease by its acceptance of housing assistance payments by HUD. We affirm.

On November 14, 1986, plaintiff as lessor and defendant as lessee entered into a written lease for a residential unit at Harbor Village Apartments in Aurora. Defendant's tenancy was subsidized by the United States Department of Housing and Urban Development (HUD) under the United States Housing Act of 1937, section 8, as amended (42 U.S.C.A. §1437f (West Supp. 1992)) (the Act). According to the record, the purpose of the section 8 program is to provide safe, decent and sanitary housing for eligible low-income families. Under the program, the government fixes the contract rent to which the landlord is entitled for the subsidized unit. Of this amount, the tenants each pay a fixed percentage of their adjusted income as their portion of the monthly rent, and the remainder of the contract rent for each unit is paid by HUD directly to the landlord. The landlord enters into a lease with the tenant and also a housing assistance payment contract with HUD. Based on his low income, Mr. Helgason's portion of the rent was $6 per month.

On April 3, 1991, Carol Meeks, plaintiff's manager at Harbor Village, served defendant with a demand for reimbursement of damages. The demand said that as a result of water damage caused to defendant's bathroom floor plaintiff incurred repair charges of $238, for which plaintiff demanded reimbursement from defendant within 30 days, under the lease. Defendant did not pay any sum pursuant to the plaintiff's demand. On May 8, 1991, defendant tendered and plaintiff received his rental payment for May 1991 in the form of a money order for $6. On May 15, 1991, plaintiff served defendant the notice of termination of tenancy for failure to reimburse plaintiff for the damages set forth in the prior demand. Plaintiff returned defendant's May 8, 1991, money order with the notice of termination. Plaintiff continued to accept HUD housing assistance payments through August 1991 for the apartment. When defendant failed to vacate the premises pursuant to the notice, plaintiff filed this forcible entry and detainer suit for possession of the premises on July 12, 1991.

The case proceeded to trial on August 23, 1991. Carol Meeks testified that she had been in defendant's apartment twice and witnessed a large puddle of water on the bathroom floor on both occasions. She testified that the water appeared to be present because of the inadequacy of the defendant's shower curtain, which had holes in it. She further stated that she had also seen a mop and water-soaked rags in defendant's bathroom on both occasions when she observed the water puddles. Lisa Howard, plaintiff's vice-president of property management, testified that the floor and subfloor in defendant's bathroom had been replaced in 1989 and that the average life of this type of

floor and subfloor is 15 years under normal conditions. She, too, stated that she had seen standing water on defendant's bathroom floor on two occasions and that she had told defendant that he should replace his shower curtain. She also testified she believed that the water on defendant's floor could only have been caused by water coming out of the tub through holes in the shower curtain. She testified she ordered defendant's bathroom floor and subfloor to be replaced in March 1991, a job which cost plaintiff $238.

Defendant testified that he never caused his bathroom floor to have standing water on it. He stated he washed the floor approximately once per week with a mop he kept in the bathroom. He denied that there ever was standing water on the bathroom floor when he conducted conversations with Ms. Meeks or Ms. Howard. He testified that he was always cautious about water on the floor since the floor had been replaced in the past. He stated that his tub never overflowed, that there were three small holes in his shower curtain, and that the two holes above the tub rim were no larger than the width of a pencil.

After considering the evidence presented, the trial court found that the defendant was less credible than the witnesses for plaintiff and awarded possession, $18 in damages, and $83 in costs to plaintiff. Enforcement of the judgment for possession was stayed until September 13, 1991.

On September 20, 1991, defendant filed a motion to vacate judgment on several grounds. On October 24, 1991, the court took the motion under advisement. On February 20, 1992, the court entered an order granting defendant's motion to vacate the judgment for plaintiff and entered judgment in favor of defendant, ruling that defendant was prejudiced by plaintiff's trial testimony as to defendant's damaged shower curtain. It also ruled that the HUD housing assistance payments constitute rent and that plaintiff's acceptance of those constituted a waiver of defendant's breach of the lease as a matter of law. Plaintiff timely filed its notice of appeal from the judgment.

The material facts and documentary evidence pertinent to the issues of due process and whether HUD payments constitute rent are not disputed in this case; thus, the manifest weight of the evidence standard is inappropriate to apply here. While a court of review ordinarily will not reverse a trial court's judgment unless it finds that its decision was against the manifest weight of the evidence, where the material facts are not in dispute, that standard is inapplicable. (*Merchants National Bank v. The Old Second National Bank* (1987), 164 Ill. App. 3d 11, 13.) The questions of sufficiency of plaintiff's termina-

tion notice and whether HUD housing payments constitute "rent" are questions of law and not subject to the manifest weight standard.

### WAIVER OF RIGHT TO FORFEITURE

Plaintiff contends that the trial court correctly decided that plaintiff did not waive its right to forfeiture by its temporary retention of defendant's money order and that the trial court erred in finding that plaintiff waived its right to forfeiture by its acceptance of housing assistance payments from HUD.

■ This court has found that forfeiture of leases is not favored, and the courts will readily adopt any circumstances that indicate waiver of forfeiture. (*Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615.) Any act which affirms the existence of a tenancy after a landlord had knowledge of a breach results in the landlord's waiver of the right to forfeiture. (*Okey, Inc. v. American National Bank & Trust Co.* (1981), 96 Ill. App. 3d 987, 993.) The lessor's acceptance of rent, with knowledge of the breach, is a well-established waiver of the right to forfeiture based on that breach. (*Barrick*, 147 Ill. App. 3d at 620; *Waukegan Times Theatre Corp. v. Conrad* (1945), 324 Ill. App. 622; *Okey*, 96 Ill. App. 3d at 993.) In the present case, plaintiff knew of the breach by defendant on May 4, 1991, when the 30-day period for reimbursement expired. Therefore, any acceptance of rent by plaintiff with respect to defendant's apartment, after plaintiff knew of the breach of the lease, would constitute a waiver of the right to forfeiture. The issue of forfeiture with respect to tenant's payment and HUD's payment will now be addressed individually.

### WAIVER OF RIGHT TO FORFEITURE
### BY TEMPORARY RETENTION OF MONEY ORDER

Plaintiff argues that the trial court correctly found that its retention of defendant's money order did not waive its right to forfeiture of defendant's lease. Defendant argues that a money order is virtually cash and that acceptance thereof constituted waiver.

The trial court found that, although there was conflicting evidence as to the tendering of the money order to Midland on May 8, 1991, it was clear that the money order was returned to defendant May 15, 1991. It then found that, even laboring under the assumption that plaintiff received the money order on May 8, 1991, plaintiff's retention of the money order for one week did not constitute an acceptance. We agree.

The retention of a draft can constitute acceptance. If a draft of a third party is held by a creditor and not returned to the debtor within

a reasonable time, the creditor has accepted the draft, even though he has not deposited it. (*Day-Luellwitz Lumber Co. v. Serrell* (1913), 177 Ill. App. 30.) A money order is considered a third-party draft. *Bank of Niles v. American State Bank* (1973), 14 Ill. App. 3d 729, 732; Ill. Rev. Stat. 1991, ch. 17, par. 4703.

The court in *Day-Luellwitz* found that, when the facts of a case are undisputed, the issue of what is a "reasonable" time within which an act should have been done is a question of law. (*Day-Luellwitz*, 177 Ill. App. at 38.) The court held that where a creditor held a draft for 3½ months without returning it, offering to return it, or notifying the debtor of an intention to not accept it, such draft was accepted. (*Day-Luellwitz*, 177 Ill. App. at 38-39.) Thus, 3½ months is an unreasonable time. To hold a draft for such a long period of time goes against the general principles of negotiable instruments. (*Day-Luellwitz*, 177 Ill. App. at 39.) A negotiable instrument is not meant to be hoarded, but rather negotiated or presented promptly. *Day-Luellwitz*, 177 Ill. App. at 39.

■ This court assumes the money order was received on May 8, 1991. On May 15, 1991, the money order was returned along with the delivery of the notice of termination. Thus, the money order was retained for at most one week. We determine that this short period of time does not constitute "unreasonable" time with respect to this issue. It is not against the general principles of negotiable instruments to hold a draft for one week. This does not constitute hoarding. Thus, the rental payment in the form of a money order was not accepted by being held for a week, and by this action plaintiff did not waive the right to forfeit the lease.

### WAIVER OF RIGHT TO FORFEITURE BY ACCEPTANCE OF HUD PAYMENTS

Plaintiff argues that the trial court erred in finding plaintiff waived its right to forfeiture by its acceptance of housing assistance payments by HUD. It argues that such payments are not rent.

Here, the issue pivots on whether HUD housing assistance payments constitute rent. This district has not previously ruled on this issue. Plaintiff relies on *East Lake Management & Development Corp. v. Irvin* (1990), 195 Ill. App. 3d 196, where the Appellate Court, First District, held that the acceptance of HUD payments by a landlord after knowledge of a breach did not constitute waiver. (*East Lake*, 195 Ill. App. 3d at 202.) In its analysis of whether acceptance of housing assistance payments constitutes acceptance of rent, the *East Lake* court relied on two Ohio Appellate Court cases which it found persuasive. (*National Corp. for Housing Partnerships v. Chapman* (1984),

18 Ohio App. 3d 104, 481 N.E.2d 654; *Sandefur Co. v. Jones* (1982), 9 Ohio App. 3d 85, 458 N.E.2d 390.) After a careful analysis of the two Ohio cases, this court does not find either of them to be persuasive as to the disposition of this case.

In *Chapman*, tenant (Chapman) was given notice to vacate the premises when she was late in paying her rent. Landlord (Spring Hill) accepted two months' worth of HUD housing assistance payments after notice was given. In its analysis, the *Chapman* court set out to determine whether payments from HUD had the same legal effect as if they were payments made by Chapman. The court first found that Spring Hill had a right to terminate the lease on the basis of nonpayment of rent. (*Chapman*, 18 Ohio App. 3d at 105, 481 N.E.2d at 656.) The court concluded that "a tenant may be evicted for failing to pay rent or a portion of the rent even though the landlord has received partial payment in the form of federal housing assistance." (*Chapman*, 18 Ohio App. 3d at 106, 481 N.E.2d at 656.) The *Chapman* court, an Ohio court, then cites *Jones* as authority for that statement. (*Jones*, 9 Ohio App. 3d 85, 458 N.E.2d 390.) The reasons this court does not rely on the *Jones* reasoning is discussed below. Thus, *Chapman* is distinguishable on the ground that this court does not rely on the *Jones* analysis of this issue.

Furthermore, the *Chapman* court reasoned that "[t]he rent subsidy, while providing a personal benefit to a qualified tenant, *** is not personal in the sense that it is her money. The fact that Spring Hill continued to receive the rent from HUD for Chapman's account does not entitle Chapman to avoid her contractual obligations." (*Chapman*, 18 Ohio App. 3d at 106, 481 N.E.2d at 656.) Thus, the court reasoned that the HUD payment did not constitute rent because it was not personal in the sense of Chapman's contractual obligations or Chapman's own money she used for rent.

■ We disagree. A HUD housing assistance payment rate is established for a specific rental unit and one qualified tenant. The tenant's rent is established specifically for that tenant at that income. The rent subsidy is established on an individual basis. Granted, the tenant never personally possesses the money provided by HUD, as HUD pays the landlord directly. Yet if the tenant's income varies, then the tenant's rent and the subsidy will vary. Thus, the benefit is personalized and should be treated as rent.

*Jones* is another section 8 housing assistance payment case which was relied upon by the *East Lake* court. (*Sandefur Co. v. Jones* (1982), 9 Ohio App. 3d 85, 458 N.E.2d 390.) The landlord, Sandefur, gave notice to quit or comply with alternatives such as payment of

past-due rent to the tenant, Jones, on the basis of nonpayment of rent. Tenant failed to comply; therefore, landlord brought a forcible entry and detainer action. HUD continued to pay housing assistance payments to landlord. The issue in the case was not whether HUD payments constitute rent, but whether landlord complied with the Federal requirements for notice set out in the regulations which were incorporated by reference into the lease. The court held that notice was sufficient to satisfy the regulations, so landlord prevailed in evicting tenant. No waiver of forfeiture of the lease occurred. We are not persuaded by the *Jones* court's reasoning since the *Jones* court did not directly analyze whether HUD payments constitute rent. Thus, we do not rely on *Jones*.

*East Lake* also cites Federal regulations which it believes support the notion that HUD payments do not constitute rent. When a subsidized unit becomes vacant following an owner's eviction of an eligible tenant, HUD regulations provide the owner is entitled to receive "vacancy payments" for 60 days or more upon a showing that he is actively trying to fill the vacancy (24 C.F.R. §§880.611, 881.611 (1992)). The *East Lake* court postulated that the intention is to reserve the subsidized unit for a subsequent qualified low-income tenant. The *East Lake* court then reasoned that continued HUD payments under a landlord's contract with HUD serve the same purpose. The court reasoned that both serve as incentive for landlord to participate in the section 8 low income housing program. This may be true, although this court takes the analysis a step further to support the assertion that HUD payments constitute rent. We believe the payments serve as a substitute for nonassisted tenant rent. If HUD did not continue to pay the landlord in the instances of eviction of low income tenants or in a case such as the present case, then the landlord would seek rent from a nonassisted tenant. Thus, the payments are a reasonable substitute for nonassisted tenants' rent, and thus the payments constitute rent.

Federal law supports the notion that HUD housing assistance payments are rent. Under the United States Housing Act of 1937, a rent is fixed by the government for the subsidized unit. (42 U.S.C.A. §1437f(c)(1) (West Supp. 1992).) HUD determines the amount of rent the family is to pay based on a fixed percentage of the annual family income. (42 U.S.C.A. §1437(c)(3) (West Supp. 1992).) HUD pays the landlord the difference between the fixed monthly rent and the rent the family is required to pay. (42 U.S.C.A. §1437f(c)(3) (West Supp. 1992).) The statute itself refers to the HUD payments as monthly assistance payments. 42 U.S.C.A. §1437f(c)(3) (West Supp. 1992).

It is difficult to imagine what the assistance payments are if they are not rent. The government sets the monthly rent for the unit. The family is required to pay a percentage of its income as part of the rental payment. The remainder is provided by HUD. It is unlikely that Congress intended for the tenant portion of the rent to be considered rent and the HUD portion to be considered nonrent.

Furthermore, the Code of Federal Regulations indicates that the monthly payments by both HUD and the tenant are "rent" for section 8 housing. "The total amount received by the Owner for rent is called the Contract Rent." (24 C.F.R. §880.101(c) (1992).) Moreover, the regulations define "contract rent" as "[t]he total amount of rent specified in the contract as payable by HUD and the tenant to the owner for an assisted unit." (24 C.F.R. §880.201 (1992).) The regulations state that the rent includes the amounts "payable by HUD and the tenant." It is clear, therefore, that under the Code of Federal Regulations HUD payments are rent.

There are indications in Federal case law dealing with section 8 issues that HUD assistance payments are rent. In its statement of facts, the court in *Sheridan Square Partnership v. United States* (D. Colo. 1991), 761 F. Supp. 738, 739, found that "[t]he bulk of the rent, however, is paid by HUD directly to the developer." Another district court stated in its statement of facts that the payments are rent in the context of improper termination of section 8 tenancies. That court stated:

> "The Section 8 private landlord receives numerous benefits from participating in the program. The monthly risk of not receiving rent from the tenant is reduced because the Housing Authority is paying the majority of the rent and the tenant is paying an amount within his means." (*Swann v. Gastonia Housing Authority* (W.D.N.C. 1980), 502 F. Supp. 362, 365.)

In the context of this case, under the Federal statute, regulations, and case law, HUD monthly assistance payments are rent.

Because the lease incorporates HUD rules and regulations, the lease is subject to Federal regulations and statute. Statutes in force when a contract is made control the interpretation of that contract. (*American Family Mutual Insurance Co. v. Baaske* (1991), 213 Ill. App. 3d 683.) In *Baaske*, this court found that a statute in force when an insurance policy was issued controlled the manner in which disputes under that policy were resolved. (*Baaske*, 213 Ill. App. 3d at 688.) Likewise, in the present case, the lease contains language incorporating HUD rules and regulations. Thus, the statute and regulations promulgated by HUD control the interpretation of this lease.

Since the statute and regulations indicate that HUD payments are rent, they prevail in the interpretation of the lease.

State trial courts of several jurisdictions have ruled that acceptance of HUD payments constitutes acceptance of rent and thus is a waiver of the right to forfeiture. Although such opinions have no precedential weight for this court, defendant cited several such opinions in his brief. See *Royal American Management, Inc. v. Godfrey* (Cty. Ct. 1985), 14 Fla. Supp. 2d 56; *Greenwich Gardens Associates v. Pitt* (1984), 126 Misc. 2d 947, 484 N.Y.S.2d 439; *Central Brooklyn Urban Development Corp. v. Copeland* (1984), 122 Misc. 2d 726, 471 N.Y.S.2d 989.

■ Plaintiff argues that even if HUD payments are considered rent, plaintiff's acceptance of such payments does not constitute a waiver as a matter of law of defendant's breach of the lease. Plaintiff argues that for waiver to exist, the landlord's conduct in accepting rent from the tenant must reasonably mislead the tenant into believing that no forfeiture would be enforced and that therefore a waiver existed. He argues that, in this case, there is no way that the action of accepting HUD payments after notice of termination would reasonably mislead defendant into believing that no forfeiture would be enforced and that a waiver existed. Plaintiff cites several cases to substantiate this argument. Some of these cases may be distinguished from the present case on their facts. For instance, *Shelby County Housing Authority v. Thornell* (1986), 144 Ill. App. 3d 71, was a forcible entry and detainer action. In that case, defendant was served with a notice of termination of tenancy and a demand for rent. Subsequently, defendant was served with a "Landlord's Five Day Notice" and a demand for rent. Following that, defendant received a notice to vacate. The defendant argued that he relied on the notice to vacate to reaffirm the tenancy such that landlord waived the notices to terminate contained in the two previous letters. The *Shelby* court found waiver did not exist. It reasoned that waiver exists where (1) there is some act by the landlord that recognizes the existence of the tenancy subsequent to the time he declared forfeiture, and (2) the tenant has been misled into believing a new date for termination has been set. *Shelby*, 144 Ill. App. 3d at 74.

■ In that case, and in several of the other cases cited by plaintiff, the action done by the landlord was merely to send out additional notices to vacate or terminate following the initial notice to terminate. The present case is distinguishable. In the present case, the plaintiff sent out one notice to terminate. He then accepted payment for most of the rent in the form of a housing assistance payment from

HUD. This is a much more onerous action than the sending out of additional termination notices. It is understandable that the *Shelby* court did not find that waiver existed, as the first element of waiver was not present. The action of sending out a notice to vacate following a notice to terminate is not a strong indication that the landlord recognizes the existence of the tenancy subsequent to the time he declared forfeiture. In contrast, the action of accepting most of the rent for the unit in the form of assistance payments from HUD is an act by the landlord recognizing the existence of the tenancy subsequent to the time he declared forfeiture.

Furthermore, it is possible that defendant had been misled into believing a new date for termination had been set due to the plaintiff's acceptance of HUD payments. The step of accepting HUD housing assistance payments is an action which may have been relied upon by defendant, since defendant's lease states that HUD makes monthly payments on behalf of defendant. Defendant thus may have assumed that most of the rent would be paid on his behalf. Thus, since both elements of waiver as defined in *Shelby* were present, waiver existed in this case.

The *East Lake* court also addressed the issue of waiver. (*East Lake*, 195 Ill. App. 3d at 202.) The *East Lake* court concluded that because "vacancy payments" and rent subsidies induce landlords to participate in the section 8 program, waiver should not attach when subsidies are accepted. (*East Lake*, 195 Ill. App. 3d at 202.) There are policy arguments to support the two bodies of law under consideration here, the Federal regulations and statutes and the Illinois waiver rule. One could infer from the *East Lake* court's opinion that the Federal regulations and statutes carried more weight in that case.

While it may be necessary to induce landlords to participate in the section 8 program, such inducements should not undermine the interests of the federally assisted tenants. One interest of tenants which is satisfied by the intent of the program is the establishment of a safe and affordable place to live for section 8 tenants. (42 U.S.C.A. §1437f(a) (West Supp. 1992).) A factor which is within the interest of the tenants is that in Illinois waiver of forfeiture is favored. (*Steven W. Barrick & Associates v. Witz* (1986), 147 Ill. App. 3d 615.) Given these interests of the section 8 tenants, it impugns the purposes of the section 8 program to relax principles of waiver based on a speculative inducement to private landlords.

Furthermore, public policy does not favor forfeitures, especially when the result is a windfall to section 8 landlords. It is against public

policy to permit a landlord to forfeit a lease and still derive the financial benefits of that lease.

As regards inducements, it is the responsibility of Congress and HUD to provide appropriate inducements for landlords to participate in the section 8 program. As already indicated, Congress and HUD have provided inducements such as guaranteed rent and vacancy payments. There is no indication in the Act that State courts should provide further inducement by relaxing established principles of waiver law. The vacancy payments regulations referred to in *East Lake* have no application to the waiver analysis and do not suggest that State law waiver doctrine be modified. If Congress or HUD had intended that this regulation invalidate State law principles of waiver, it would have so stated. In the absence of such a statement, section 8 tenants should be entitled to the same principles of law guiding any other tenant's rights in a forcible entry and detainer action. Thus, acceptance of housing assistance payments from HUD constitutes a waiver of forfeiture of the lease.

In conclusion, we determine that acceptance of HUD housing assistance payments after notice of termination constitutes acceptance of rent. The lessor's acceptance of rent, with knowledge of the breach, is a well-established waiver of the right to forfeiture based on that breach. (*Barrick*, 147 Ill. App. 3d at 620; *Okey*, 96 Ill. App. 3d at 993.) We hold that the forfeiture of the lease was clearly waived by the acceptance of the June, July and August HUD payments after notice of termination. The February 20, 1992, order of the trial court of Kane County is affirmed with respect to this issue.

### DUE PROCESS

Defendant contends that he was not rendered due process because the evidence presented at trial differed from the grounds for termination stated in the termination notice. The notice stated that the termination was based on his "material noncompliance with the lease contract for failure to reimburse the landlord for damages in accordance with paragraph 11 of the lease contract." It stated that the damages resulted from his "letting the bathtub overflow thereby destroying the floor, subfloor, tile and cove [*sic*] base." At trial, plaintiff did not introduce evidence as to the overflow of the bathtub, but introduced evidence as to the leaking of water onto the floor through holes in the shower curtain. Plaintiff contends that the grounds in both the notice of termination and at trial were the same: the termination was based on the "material noncompliance" with the lease by "failure to reimburse the landlord for damages."

■ It is true that the notice states that "[t]his termination is based upon [defendant's] material noncompliance with the lease contract for failure to reimburse the landlord for damages." Thus, what plaintiff argues is true to some degree. Yet, implicit in that charge of material noncompliance is the necessity to show defendant caused that damage through "carelessness, misuse, or neglect" as stated in paragraph 11 of the lease. Thus, in order to render due process to defendant it *was* necessary for plaintiff to indicate how the damage may have occurred. In this case, this court finds that the statement the damage was caused by letting the bathtub overflow was sufficient to indicate to defendant that evidence of carelessness or misuse of water on the bathroom floor would be presented at trial.

In *Wilson*, this issue was addressed. (*Sandefur Management Co. v. Wilson* (1985), 21 Ohio App. 3d 160, 486 N.E.2d 1267.) In that case, the landlord of a federally subsidized property served the tenant with a notice of termination of tenancy, informing tenant that she was in material noncompliance with the terms of the lease by failing to pay utilities and resulting in "burst pipes." (*Wilson*, 21 Ohio App. 3d at 162-63, 486 N.E.2d at 1270.) At trial, while the basis for termination was still that tenant was in material noncompliance by failing to pay utilities, the landlord proceeded on the basis that the tenant *might* cause the pipes to burst. The tenant objected that the evidence at trial was different from that described in the notice. The court found that tenant was sufficiently apprised of her alleged violation and not prejudiced in her defense. *Wilson*, 21 Ohio App. 3d at 162-63, 486 N.E.2d at 1270.

Defendant relies on *Escalera* to state that notice must effectively inform the tenant so that he could rebut the evidence at trial. (*Escalera v. New York City Housing Authority* (2d Cir. 1970), 425 F.2d 853.) We distinguish *Escalera*. Although that is a public housing case, in that case notice preceded an administrative hearing, not a judicial hearing, and the tenant's benefits had been terminated. In such a case, the requirements of notice may be different from those in a case which is coming before a judicial court and benefits have not been previously terminated. The Illinois Appellate Court has distinguished *Escalera* on the basis of the peculiar nature of the leases involved and the lack of remedy available to the tenant in the New York State courts. (*Housing Authority v. Moore* (1972), 5 Ill. App. 3d 883.) The court stated, "[w]e do not consider the holding in *Escalara* [*sic*] to be applicable to an action brought under the Illinois Forcible Entry and Detainer Act, in a case in which the benefits have not been previously terminated." (*Moore*, 5 Ill. App. 3d at 889.) This court further notes

that some of the protections called for in *Escalera* were subsequently codified in New York statute, as noted in *Vialez v. New York City Housing Authority* (S.D.N.Y. 1991), 783 F. Supp. 109.

To address whether defendant was properly notified of his termination and the reasons for it, this court looks to the wording of the lease and the Federal regulations which prevail over termination of federally assisted tenancies. Paragraph 23(c) of the lease states that the notice must "state the grounds for termination with enough detail for the [t]enant to prepare a defense." The Federal regulations, too, require that plaintiff serve its tenant a written notice of termination stating the grounds for the termination with enough specificity to enable the tenant to prepare a defense. 24 C.F.R. §247.4(a)(2) (1992).

We determine that defendant was sufficiently apprised that the cause of the damage was careless leakage of water over the bathroom floor. Whether the leakage was caused by overflowing of the tub, or through holes in the shower curtain, defendant should have known that the type of evidence he would have to defend against at trial would be evidence of carelessness or misuse of water on the bathroom floor.

Furthermore, defendant cannot claim prejudice because he introduced his own evidence regarding the shower curtain at trial. A party cannot complain that evidence which he put into the record is prejudicial to him. (*Casson v. Nash* (1978), 74 Ill. 2d 164, 172.) In this case, defendant himself introduced evidence as to the condition of the shower curtain. Thus, he cannot object to the prejudicial nature of that evidence.

■ Plaintiff argues that defendant waived his right to object to this evidence because an objection was not raised at trial. However, defendant argues that the issue was raised by the trial court on its own motion. This court finds that, while defendant did raise the issue of insufficient notice in his post-trial motion, it was in the context of the denial of defendant's motion for a continuance. Thus, the trial court addressed a lack of due process brought about by the issue of insufficient notice on its own motion. A trial court may act on its own motion to correct errors at trial. (*Freeman v. Chicago Transit Authority* (1965), 33 Ill. 2d 103.) Thus, in this case, the trial court raised the issue of lack of due process in its opinion entered February 20, 1992. Despite the fact that this issue was raised by the trial court, this court does not agree with the trial court's ruling. We determine that the notice was adequate to permit defendant to prepare a defense for trial.

914

Defendant puts forth a largely unsubstantiated argument that the violation was not a "substantial" violation of the lease and therefore plaintiff had insufficient cause to terminate defendant's tenancy. Notwithstanding the difficulty a tenant in federally assisted housing may have in paying a demand for reimbursement as we have in this case, the defendant entered into the rental agreement knowingly. Paragraph 11 of the lease states in pertinent part:

"Whenever damage is caused by carelessness, misuse, or neglect on the part of the [t]enant, *** the [t]enant agrees to pay: the cost of all repairs and do so within 30 days after receipt of the [l]andlord's demand."

Thus, defendant should have been on notice that this was a substantial violation of the lease. We conclude that this constituted a "substantial" violation of the lease and that the termination of tenancy had proper grounds.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

INGLIS, P.J., and McLAREN, J., concur.